**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Fred Louis BELL and Charles Lavern Beasley, Defendants-Appellants.**

**No. 71–2234.**

United States Court of Appeals, Fifth Circuit.

March 23, 1972.

Rehearing Denied April 21, 1972.

Leighton Cornett, Paris, Tex. (Court-appointed), for Fred Louis Bell.

John D. Hill, Sherman, Tex. (Court-appointed), for Charles Lavern Beasley.

Roby Hadden, U. S. Atty., Dale Long, Asst. U. S. Atty., Tyler, Tex., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This bizarre joint trial bank robbery case presents fourteen points of error

from the gratuitous grant of a new trial on a motion for reduction of sentence, which one defendant still disclaims; to the admission of evidence of an airplane hijacking in Canada against the other. After unraveling this tangled web of human miscreance and judicial error, we conclude that this case must be affirmed in part and vacated in part.

■ The convoluted factual matrix of this case had its genesis in the robbery of the Farmers and Merchants State Bank of Ladonia, Texas on August 19, 1968. Shortly thereafter, Fred Louis Bell and Charles Lavern Beasley were arrested and indicted for this robbery. After indictment, on December 9, Bell pled guilty and was sentenced to six years, which he began to serve immediately. Several months later Bell filed a pro se F.R.Crim.P. 35 motion requesting a reduction in his sentence. The district judge, on April 25, 1969 denied all relief affirmatively sought by the motion, but ordered that the motion be treated as one made under 28 U.S.C.A. § 2255 (1971). An evidentiary hearing was thereupon conducted, followed by an order vacating the prior conviction and requiring a new trial. The Court found that the arrest warrant was defective since the supporting affidavits did not attest to the credibility and reliability of the *eyewitnesses,* whose statements it quoted, citing Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Thus, it concluded that Bell's arrest and the subsequent search of his home were invalid. All this was ordered in spite of the fact that Bell had never asked for a new trial and had pled guilty in the earlier proceeding.[1] However, neither the Government nor Bell appealed this decision.

Subsequently, the same district judge heard Bell's new pretrial motion to suppress, but this time he reversed himself and held that the arrest and subsequent search were not illegal. Another judge of the district presided over the actual trial of the case.

Bell and his co-indictee Beasley, who had pled not guilty, were tried jointly. The jury found both defendants guilty of conspiring to rob the bank in violation of 18 U.S.C.A. § 371 (1966). Bell was found guilty of violating 18 U.S.C.A. § 2113(a) (1970) (robbery of a bank without assault), and Beasley was found guilty of violating 18 U.S.C.A. § 2113(d) (1970) (robbery by assault). Bell was sentenced to concurrent terms of ten and five years, four more years than he received at the first sentencing. Beasley received the same sentences.

On this appeal we first will discuss those issues unique to Bell, then those unique to Beasley, and finally, their common contentions.

### BELL

■■ Bell first asks that his original conviction be reinstated since the first district judge erred in gratuitously granting him a new trial. Under the circumstances of this case, we reluctantly conclude that Bell may not collaterally attack this final order. Because Bell did not appeal the granting of a new trial, *see* 28 U.S.C.A. § 2255 (1971), the district judge's order became final. While this in itself may not be enough to preclude a collateral attack in other cases, here there is more. Bell did not complain during the thirteen month hiatus between the granting of a new trial and the new trial itself, nor did he complain during the trial. In fact, this point of error was not raised until Bell had been reconvicted. According *nunc pro tunc* invalidity to an order in such circumstances would have serious precedential ramifications. It would encourage others to similarly seek

---

1. The district judge held that the illegal search and seizure caused the guilty plea and thus vitiated the plea. The general rule is, of course, that a plea of guilty waives all non-jurisdictional defects, including claims of illegal searches and seizures. United States v. Escandar, (5th Cir. 1972) [No. 71–1279, January 24, 1972]; Hayes v. Smith, 447 F.2d 488 (5th Cir. 1971). Research discloses no other case holding an illegal search and seizure can vitiate a guilty plea. Cf. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

to have the best of all possible worlds. Such a defendant would receive a second bite of the trial apple in hopes of acquittal, and as a safety valve, retain the assurance that he could reclaim his prior conviction if he should receive a less satisfactory sentence on the second go-round. Even though we agree that the district judge committed error in granting a new trial, we will not allow Bell to have his proverbial cake and eat it too. Cf. Thomas v. United States, 455 F.2d 469 (5th Cir., On Rehearing, 1972).

■ Bell complains of the admission of the in-court identification testimony of one of the government's witnesses. He claims that she viewed an impermissibly suggestive photo spread just two days after the robbery and identified him then, but was unable to choose him out of a lineup about ten days later. Bell asserts that the display was suggestive because his photo is a full length shot while the rest of the photos are bust shots, which was an unduly suggestive difference because that witness had seen the actual robber *standing* beside his car. The trial judge followed the procedure suggested in United States v. Sutherland, 428 F.2d 1152 (5th Cir. 1970) and determined that the display was not impermissibly suggestive. We have ourselves viewed the display and concur with the trial judge's finding. The tenuousness of the identification was for the jury. United States v. Sullivan, 456 F.2d 1273 (5th Cir. 1972).

■ Bell next argues that the trial judge erred in not making available to him certain alleged Jencks Act documents. The trial judge conducted an examination of the documents in camera and decided that only four pages out of fifty had to be produced. These documents consisted of reports prepared by FBI agents relating to interviews with witnesses and the processes and results of the investigation. The trial judge correctly refused to require the production of reports relating to the witness interviews. There was an insufficient connection between these reports and the FBI agent's direct testimony. *See* United States v. Graves, 428

F.2d 196 (5th Cir. 1971). Also, there was no showing that any of those interviewed adopted any of the statements as their own. *See* United States v. Blackburn, 446 F.2d 1089 (5th Cir. 1971); United States v. Scaglione, 446 F.2d 182 (5th Cir. 1971).

■ A more complicated problem arises, however, in determining the correctness of the refusal to require production of the reports of the investigatory procedures and results. It is well established that "individual 'notes and reports' of agents of the Government, made in the course of a criminal investigation, are the proper subject of inquiry and subject to production under the Jencks Act, . . . ." Lewis v. United States, 340 F.2d 678, 682 (8th Cir. 1965) and cases cited therein. It is not the function of the trial judge to speculate as to the usefulness of the reports to the defendant, rather his primary inquiry is directed to the producibility of the reports, i. e., is the report a "statement" under the Act? Does it relate to the subject matter of the witness's testimony? United States v. Blackburn, *supra*; United States v. Matthews, 407 F.2d 1371 (5th Cir. 1969); Lewis v. United States, *supra*. However, the trial judge's resolution of these questions must be accorded their full weight under the clearly erroneous test. United States v. Blackburn, *supra*; Lloyd v. United States, 412 F.2d 1084 (5th Cir. 1969). In the case at bar some were required and the remainder were not. After careful review, we conclude he was not clearly erroneous as to those he refused to require.

■ Bell asserts that the jury was not authorized under Count I of the indictment to find him guilty as a principal to robbery of a bank without assault inasmuch as Count I charged him solely with aiding and abetting. While the better practice would have been to frame the charge in the alternative, the contention is without merit. Under 18 U.S.C.A. § 2 (1969), an aider and abettor is a principal and can be punished as such.

■ Bell urges that the trial judge erred in allowing a police state atmos-

phere to be fostered at the trial. He points out that all the spectators, most of whom were his friends, were searched by United States Marshals each time they entered the courtroom. He further indicates that the jury entered through the same door as the spectators, and that the spectators' seats were within a few feet of the jury box. Bell argues that the jury could not have helped but notice the searches, and thus may well have inferred that he was a dangerous man who consorted with lawless people. Bell and Beasley were black and the spectator-friends were also black. However, no indications or intimations were given to the jury that there was an association or connection between Bell and any of the spectators, other than the inference which a juror might draw from their attendance in today's world of sparse interest in trials on the part of the general public. This wholly conjectural link is an insubstantial link to prejudicial error. Furthermore, the record reveals that the trial judge had been advised that there was a possibility of a courthouse escape attempt. Even if this was mere rumor he certainly did not abuse his discretion in instituting the reasonable security measures described here.

■ Bell claims that proper credit was not allowed him on his sentence for pre-conviction time spent in the Dallas County jail, the Smith County jail, and the Harrison County jail. We are unable to discern from the record whether or not Bell was entitled to credit against his sentence for any period of these incarcerations or whether, if proper, such credit has been given. We therefore must remand to allow the district court to consider this contention. *See* Ballard v. Blackwell, 449 F.2d 868 (5th Cir. 1971) and cases cited therein.

■ As previously noted, Bell was sentenced to ten years at this trial, whereas in the first proceeding, in which he pled guilty, he received six years. The arguments advanced by both sides concern the proper application of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The Government contends that the district court made affirmative findings of a change in conditions, in accordance with *Pearce*, which justify the imposition of a harsher sentence.[2] The district court found, in comparing the testimony of Bell before the grand jury and his testimony in the instant trial, that Bell must have committed perjury at one or the other. This is not a permissible affirmative finding under *Pearce*. In effect, Bell has been adjudicated guilty of the crime of perjury without a presentment to a grand jury, without a trial by a jury of his peers, without the right to present evidence in his behalf, and without other procedural safeguards designed for the protection of an accused. United States v. Gambert, 433 F.2d 321 (4th Cir. 1970). In essence, summary punishment has been inflicted upon Bell without due process of law. We therefore vacate the judgment and sentence and remand the cause to the district court with directions to impose a new sentence not to exceed six years.

### BEASLEY

■ Beasley likewise complains of the impermissibly suggestive nature of a photo display. He points out that he is the only person in the display with a bandage on his forehead and his mouth open exposing snaggled teeth. Beasley also alleges that all the other persons in the display possess an extremely dark skin in comparison to his. The judge followed *Sutherland* procedures as to the admissibility of these photos. We have reviewed the display and conclude both that the differences in skin tone which are minimal and the bandage and visibility of Beasley's teeth do not render the display impermissibly suggestive. We have further considered the differences in their totality and agree that they do not constitute impermissible suggestiveness.

2. *Pearce* did not completely interdict the imposition of a higher sentence upon re-

trial. Chaffin v. Stynchcombe, 455 F.2d 640 (5th Cir. 1972).

■ Beasley was placed under arrest in Montreal, Canada for attempting to hijack an airplane from St. John, New Brunswick, Canada to Cuba. At trial, the Government adduced this evidence as indicating flight from the scene of the robbery. Beasley interposes two objections to the admissibility of this evidence. First, he argues that the sole witness to the hijacking based his testimony upon hearsay evidence. The witness was a Canadian policeman who testified he arrested Beasley when he disembarked from the plane, and later pressed charges against Beasley in a Canadian court. He admitted that he had no personal knowledge of events prior to the effectuation of the arrest, but he also testified that he was present when Beasley pled guilty to the hijacking charge. The fact that he knew from conversations with others that there had been a hijacking was only admitted to show why he had arrested Beasley. Enlow v. United States, 239 F.2d 887 (10th Cir. 1957); C. McCormick, Law of Evidence § 228 (1954). Much like the man who, while not having seen the mule bite the man's finger off, testified he saw it spit the finger out, the policeman here did not testify to anything within the pale of the hearsay rule. His testimony, based on what his own senses perceived, was probative evidence that Beasley had attemped to hijack an airplane.

■ Beasley's second objection to this evidence presents us with cause for more concern. He asserts that the prejudicial effect of the skyjacking far outweighs the tenuous link between the crime in Canada and the bank robbery in Texas. Beasley was arrested three weeks after the robbery at a place in Canada approximately 1900 miles from the scene of the robbery. There is no question but that flight may be used as evidence of guilt. United States v. Deas, 413 F.2d 1371 (5th Cir. 1969); Bailey v. United States, 410 F.2d 1209 (10th Cir. 1969); Edmonds v. United States, 106 U.S.App. D.C. 373, 273 F.2d 108 (1959). The trial court's task here is to strike a proper balance between relevancy and prejudice.

The appropriate appellate test is one of abuse of discretion. *See* C. Wright, Fed. Prac. and Proc: Crim. § 402 pp. 65–66 (1969) and cases cited therein. We cannot say that the trial judge abused his discretion. Beasley had been identified as one of the robbers, thus placing him at the scene of the crime. Beasley was known to have lived in Dallas, only seventy-five miles from Ladonia, and was known to have relatives in Dallas. FBI agents testified that they were unable to locate him in Dallas. Finally, Beasley was apprehended in Canada, a country from which he could be extradited, attempting to go to Cuba, a country from which he could not be extradited.

■ Beasley contends that the trial judge erred in not granting his motion for judgment of acquittal. He reasons that the sole identification witness's testimony was inadmissible due to the suggestiveness of the photo display; therefore, there was no evidence remaining to support a conviction. Since we have previously held the in-court identification admissible, this ratiocination must fail. In this direct evidence case, we conclude that "taking the view most favorable to the Government, a reasonably minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." United States v. Hill, 442 F.2d 259, 261 (5th Cir. 1971). *See also* United States v. Johnson, 455 F.2d 311 (5th Cir. 1972) and United States v. Reid, 441 F.2d 1089 (5th Cir. 1971).

## COMMON CONTENTIONS

Bell was arrested at his home in Dallas, Texas about four days after the robbery, pursuant to an arrest warrant which we have previously noted was found both defective and valid by the first district judge who handled Bell's case. The facts were that FBI agents, after effecting the arrest of Bell in the house, searched the house and yard and found an envelope in a bedroom and partially burned green sweater in the backyard near some garbage cans. The envelope bore the return

address of the bank, and it was identified by a bank employee as the envelope she placed in the robbers' pillow case. The sweater appeared to have one of its sleeves cut off. It should be noted here that one of the robbers, to this day unidentified, wore a mask made of the same type and color material as the sweater. This mask had been recovered beside a country road outside Ladonia.

 The first issue we must face is the illegality *vel non* of Bell's arrest. Even though the court initially held the arrest warrant invalid by extending the *Aguilar* and *Spinelli* requirements to eyewitnesses, nevertheless, on motion to suppress, this same district judge held that the agents possessed probable cause to arrest. Thus the arrest was legal, and the search was incident to a valid arrest. Although there is much sound and fury between the parties as to the existence of probable cause to arrest, we choose not to venture into the mostly visceral concept of probable cause, for a specter has arisen in this case that deserves to be laid to rest. It is now a well-settled and familiar concept, as enun-

ciated by *Aguilar* and *Spinelli*, that supporting affidavits in an application for a search warrant must attest to the credibility of an informant and the reliability of his information. *See also* United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). We have discovered no case that extends this requirement to the identified bystander or victim-eyewitness to a crime, and we now hold that no such requirement need be met. The rationale behind requiring a showing of credibility and reliability is to prevent searches based upon an unknown informant's tip that may not reflect anything more than idle rumor or irresponsible conjecture. Thus, without the establishment of the probability of reliability, a "neutral and detached magistrate" could not adequately assess the probative value of the tip in exercising his judgment as to the existence of probable cause. Many informants are intimately involved with the persons informed upon and with the illegal conduct at hand, and this circumstance could also affect their credibility. None of these considerations is present in the eyewitness situation such as was present here.[3]

3. The affidavit involved read as follows:
The undersigned complainant being duly sworn states:
That on or about August 19 , 1968, at Ladonia, Fannin County, Texas, in the Eastern District of Texas (1) Charles Lavern Beasley, wilfully and unlawfully and with felonious intent did (2) take by force and violence and by intimidation, from the person and presence of Mrs. W. D. Braley, Assistant Cashier, $13,111.76 in money, belonging to and in the care, custody, control, management, and possession of the Farmers and Merchants State Bank, Ladonia, Texas, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and Charles Lavern Beasley in committing the aforesaid act did assault and place in jeopardy the life of Mrs. W. D. Braley by the use of a dangerous weapon, to-wit, a hand gun; and that the said Fred Louis Bell did wilfully and knowingly aid and abet Charles Lavern Beasley by waiting beside a red Mercury automobile near Ladonia, Texas, on August 19, 1968, and thereafter did assist in the escape of Charles Lavern Beasley and his associate by driving them away from the Ladonia

vicinity in a red Mercury automobile, following the robbery.
And the complainant states that this complaint is based on positive identification of a photograph of Fred Louis Bell by Mrs. Thelma Apple, Commerce Street, Ladonia, Texas, as the individual she observed standing by a red automobile on Willow Grove Road near Ladonia, Texas, during the morning of August 19, 1968.
John Arthur Smith, RFD, Honey Grove, Texas, can testify that at 10:00 A.M. on Farm to Market Road No. 1550, about five or six miles from Ladonia, Texas, he observed a 1964 or 1965 pale blue Plymouth occupied by three negro males closely followed by a red 1963 or 1964 Mercury convertible occupied by one negro male, proceeding toward Ladonia, Texas.
Mrs. Jane Rattan, Ladonia, Texas, can testify that she saw two men run from the Farmers and Merchants State Bank at Ladonia, Texas, at the time of the robbery on August 19, 1968, and enter a blue automobile which was driven away by a third individual at a high rate of speed.
Detective Wayne Posey, Intelligence Unit, Police Dept., Dallas, Texas, can

Such observers are seldom involved with the miscreants or the crime. Eyewitnesses by definition are not passing along idle rumor, for they either have been the victims of the crime or have otherwise seen some portion of it. A "neutral and detached magistrate" could adequately assess the probative value of an eyewitness's information because, if it is reasonable and accepted as true, the magistrate must believe that it is based upon firsthand knowledge. Thus we conclude that *Aguilar* and *Spinelli* requirements are limited to the informant situation only.

 Having resolved that the arrest was made pursuant to a valid warrant, we must determine for Bell's appeal the permissible scope of a search incident to a lawful arrest. However, preliminarily, we will adjudicate Beasley's standing to contest this search. The litmus test for standing under the Fourth Amendment is whether or not the search was directed at the complainant, Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), or was directed at an area in which the complainant had a reasonable expectation of freedom from governmental intrusion. Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). *See also* Smith v. Beto, 433 F.2d 983 (5th Cir. 1970); United States v. James, 432 F.2d 303 (5th Cir. 1970); Cassady v. United States, 410 F.2d 379 (5th Cir. 1969). Proprietary or possessory interest in the searched area is only relevant in assessing the presence of a reasonable expectation of privacy. Thus there are cases holding that a person who abandons his interest in property thereby forfeits his Fourth Amendment rights, United States v. Edwards, 441 F.2d 749 (5th Cir. 1971) and United States v. Manning, 440 F.2d 1105 (5th Cir. 1971), for how can a person have any reasonable expectation of privacy in abandoned property. There is no evidence in this record indicating Beasley possessed any property right in Bell's home. Nor is there any evidence evincing that Beasley possessed any expectation of privacy as to Bell's home. Beasley was not on Bell's premises at the time of the arrest. Beasley is in the position of a mere co-defendant harmed by the introduction of damaging evidence which eventuated from an arguably illegal search of the premises of another person. *See* United States v. Callahan, 439 F.2d 852 (2nd Cir. 1971); United States v. Parrott, 434 F.2d 294 (10th Cir. 1970); Sendejas v. United States, 428 F.2d 1040 (9th Cir. 1970). We conclude that Beasley has no standing to contest this search.

 Since Bell does possess the requisite standing, we must review the propriety of this search. Bell was arrested at the door of his four-room home and was immediately taken before a magistrate. The search of the house and yard began after Bell had been taken away. Since this search occurred prior to Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and since *Chimel* is not retroactive, Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), we hold the search of the house was lawful under the standard of Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). Therefore, the envelope was

---

testify that he has personal knowledge that Charles Lavern Beasley and Fred Louis Bell are close associates at Dallas, Tex.

Special Agent C. T. Brown, Jr., F.B.I., Dallas, Texas, can testify that on August 20, 1968, he observed a red 1965 Mercury automobile parked at 4611 Garland Ave., Dallas, Texas, and determined that this car was registered to Freddie Louis Bell, Dallas, Texas.

On August 20, 1968, SA C. T. Brown, Jr., observed a recently burned 1963 Plymouth, 4-door automobile, blue in color on Willow Grove Road, a half mile from the location where Mrs. Thelma Apple had observed the red automobile.

And the complainant further states that he believes that

Mrs. Thelma Apple, Ladonia, Texas
John Arthur Smith, RFD, Honey Grove, Tex.
Mrs. Jane Rattan, Ladonia, Texas
Detective Wayne Posey, Int. Unit, Police Dept. Dallas, Tex.
SA C. T. Brown, Jr., F.B.I., Dallas, Tex.
are material witnesses in relation to this charge.

properly admitted into evidence. However, we have found no case that would permit this search to extend to the yard. In fact, the *Harris* case appears to define the outer perimeter of a pre-*Chimel* search. *See* Von Cleef v. New Jersey, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728 (1969); Drayton v. United States, 205 F.2d 35 (5th Cir. 1953); United States v. Marrese, 336 F.2d 501 (3rd Cir. 1964). The rationale and test for a pre-*Chimel* search were succinctly encapsulated in Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964).

The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v. United States, supra, 269 U.S., [20] at 31, 46 S.Ct. [4] at 5, 70 L.Ed. 145.

The search of the yard was clearly too remote in time and place from the arrest to be incident to that arrest. The search began after Bell had been taken away and continued for more than two hours. The search of the yard clearly was not related to the arrest and in effect was a general exploratory search. We conclude then that the sweater was improperly admitted.

■■ However, we conclude under the circumstances that this error was harmless to Bell. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The jury had before it Bell's confession to the police, his confession to the grand jury, the envelope, and eyewitness testimony linking him circumstantially to the robbery as the driver of the

getaway car. We are satisfied beyond a reasonable doubt that the proof that trash in Bell's yard included a partially burned sweater matching a mask worn by an unknown third participant would have had no effect on the outcome of his trial.

■■ Both defendants allege error in the failure to suppress Bell's confession. The district judge conducted the required Jackson v. Denno hearing and concluded that Bell had been advised of his rights as outlined in *Miranda,* that he knowingly and intelligently waived his right to counsel, and that the confession was freely and voluntarily made. These fact findings on the pretrial motion to suppress were not clearly erroneous. United States v. Merritt, 454 F.2d 1162 (5th Cir. 1972). Furthermore, the confession was admitted only as to Bell, and was properly edited to delete all references to Beasley. *See* Posey v. United States, 416 F.2d 545 (5th Cir. 1969).

■ There were no blacks on the jury eventually selected to try this case, and there were only two blacks on the entire venire of seventy-five. Bell and Beasley argue that the trial judge erred in failing to sustain a motion to quash the jury panel because of presumptive racial discrimination. The jury selection procedure in the Eastern District of Texas is based on the random selection of persons from certified voter registration lists and has been approved by this Circuit. No showing was made that the procedure is inherently defective, and the testimony of the District Court Clerk that the plan was strictly adhered to was undisputed. The contention is without merit.

■ Finally, Bell and Beasley assert that the trial judge erred in not granting a motion for severance. We believe that the jury could have properly evaluated separately the evidence against each defendant as to each separate charge. The trial judge did not abuse his discretion. United States v. Harris, 458 F.2d 670 (5th Cir. 1972).

The judgment as to Beasley is affirmed. The judgment as to Bell is vacated and remanded for entry of a new

judgment not to exceed six years. On this remand the district court should also determine what credit, if any, Bell should be awarded against such sentence on account of time served in jails before commitment.

Affirmed in part, vacated in part and remanded with directions.