**UNITED STATES of America, Plaintiff,**

v.

**Leonard B. BRODY, Jr., and Claude E. Brody, Defendants.**

**Crim. A. No. 23893-3.**

United States District Court, W. D. Missouri, W. D.

April 16, 1973.

Anthony P. Nugent, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Joseph E. Stevens, Lathrop, Koontz, Righter, William C. Hopkins, II, Clagett, Park & Norquist, Kansas City, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DENYING MOTIONS TO SUPPRESS EVIDENCE

WILLIAM H. BECKER, Chief Judge.

Because of the appeals of the defendants, this formal memorandum is filed to provide formal findings of fact and conclusions of law.

On the evening of July 7, 1972, Officer James T. Kopp, patrolman of the Kansas City, Missouri, Police Department seized from a 1967 Cadillac automobile a sawed-off shotgun and narcotics. The defendants were indicted in this Court for illegal possession of the sawed-off shotgun in violation of § 924(b), Title 18, U.S.C., and § 5861(d), Title 26, U.S.C. The defendants have moved to suppress evidence in the form of an illegally possessed sawed-off shotgun found by police officers in a Cadillac automobile occupied by the defendants.

Plenary pretrial evidentiary hearings were begun on December 11, 1972, and completed on December 12, 1972. The evidence adduced at these hearings proved by a preponderance of the evidence, and beyond a reasonable doubt as well, the following facts.

On May 12, 1972, Wesley Turner, a 16 year old youth of Kansas City, Missouri, was released from custody from the Missouri State Training School for Boys at Boonville, Missouri (for juvenile delinquents), and returned to Kansas City. He was befriended by Kansas City Patrol Officer Nicks of the "Pin-point Police Patrol" in the area of his residence. Officer Nicks was interested in Turner and secured a job for Turner. He saw Turner nearly every day. Officer Nicks gave his printed card to Turner to use if Turner got in trouble. The card was given to introduce Turner as a friend of Officer Nicks to use if Turner got in

trouble, or wished to communicate with the Kansas City Police Department if Officer Nicks was unavailable. The card contained the name and address of Officer Nicks, and the telephone number of the Kansas City Police Department. On the card Officer Nicks had written a message requesting that courtesy be given to Turner as his friend. Turner did not regard himself as an "informant". He was not given money or any reward by Officer Nicks but answered inquiries of Officer Nicks about the persons Turner knew and if he saw a "subject" he would truthfully tell Officer Nicks.

Prior to July 7, 1972, the night the shotgun was seized, Turner had been asked by the two defendants to go to Omaha and participate in an armed robbery of the race track there. The defendants had taken Turner for a ride on the back seat in a Cadillac automobile in possession of the defendants. Then he was shown a sawed-off shotgun under the front seat of the Cadillac, while the armed robbery was discussed by the defendants. The front seat was movable forward and backward, laterally and vertically by electric power. To show the shotgun to Turner, the defendant Claude Brody pushed a control and the seat came up.

Previously, from a car in which defendant Claude Brody was an occupant, the front headlight of a car in a driveway had been shot out one foot away from Turner, who began to fear for his life.

On the evening of July 7, 1972, Turner again saw the shotgun under the front seat of the Cadillac, in a position over the transmission "hump", where it was visible when the seat was raised, although there was a footrest behind the front seat. This was the third time in two days Turner had seen the shotgun there. Previously the defendants had physically assaulted and injured another youth, Ronald Dorsey. Turner knew of this assault and injury.

On the evening of July 7, 1972, Turner was so fearful of the defendants and of getting into serious trouble that he

decided to give his eyewitness information about the presence of the shotgun, and of the defendants. So he called the downtown police department number and asked if Officer Nicks was in. Turner was advised that Officer Nicks was not available. The officer answering the telephone asked Turner what the story was. Turner asked to be met at 33rd and Prospect Streets, Kansas City, Missouri, by an officer to give information. The request was relayed to the police radio dispatcher, who broadcast a message to Officer James M. Hughes on duty in a patrol car which cruised the area including 33rd and Prospect. In the early evening just before dark, Officer Hughes proceeded to 33rd and Prospect where he first failed to find Turner. As Officer Hughes returned by 35th and Prospect, Turner stopped Officer Hughes and advised Officer Hughes that he had been "propositioned" by two men in a Cadillac to become involved in a robbery; that the two black men had a sawed-off shotgun under the driver's seat of a blue-black Cadillac (and also some marijuana); that the men would soon be in the area of 39th and Woodland Streets. Officer Hughes did not personally know Turner but was informed by Turner that Turner had earlier given information to Officer Nicks, who formerly worked as a walking patrolman at 29th and Prospect Streets, a nearby area. (Turner also gave Officer Hughes the name of defendant Leonard Brody advising him that Leonard Brody was charged with assault of Ronald Dorsey in June 1972 and wanted for resisting arrest. This was correct. At the time of the hearings on the motions these charges were still pending.)

Hughes communicated the information given by Turner to the police dispatcher and was directed to come into the central station.

The dispatcher later broadcast the information given by Turner that a 1967 black over blue Cadillac, bearing 1972 Missouri license plates, occupied by two black males would be in the vicinity of 39th and Woodland Streets; that a

sawed-off shotgun and narcotics would be under the front seat. (The reported narcotics are not material to this motion.)

Officer James T. Kopp, then a district patrolman on duty in a patrol car, received this radio message, attributed to an unnamed East Zone officer, after 10:00 P.M. Officer Kopp with Officers Hanton and Gibson on foot patrol in the area had been checking another automobile report, shortly before the radio message arrived. Officers Hanton and Gibson had portable receivers with which they received the radio message conveying the information Turner provided. Officer Kopp knew defendant Leonard Brody personally as a result of answering a call a week before for help by Officers Wallace and Patterson at the Brody residence. He answered the call and saw defendant Leonard Brody resist arrest for assault of a civilian, knock down the two police officers and run through a rose trellis. On this occasion Officer Kopp had arrested the defendant Leonard Brody, who was considered armed and dangerous.

At about 10:20 P.M., as predicted, the described Cadillac occupied by two black males (and a female) arrived in the area. The three officers in the area saw the Cadillac come out of the A & P parking lot then turn and come back into the lot where it was parked. Then defendant Claude Brody and his female companion got out of the Cadillac and started toward the nearby Cornell Hotel.

Officer Kopp used the car automobile two way police radio to check the current information on the Cadillac and license plates by number. He received an answer that the owner had requested an "attempt to locate" which is not a stolen car complaint.

Officer Gibson followed defendant Claude Brody and his female companion, who walked rapidly toward the Cornell Hotel.

Officers Hanton and Kopp approached the parked Cadillac in which Leonard Brody was sitting on the right side of

the front seat. Officer Hanton approached on the right side and interrogated the defendant Leonard Brody about ownership of the car. Officer Kopp approached on the left side to investigate the report about the sawed-off shotgun. As he did so he recognized the defendant Leonard Brody. The window was open on the right side. Officer Hanton directed Leonard Brody to get out of the car for a "frisk." The shotgun was within reach of Leonard Brody but he did not reach for it. Defendant Leonard Brody got out of the car as directed. When he got out Officer Kopp pushed the front seat electric control button by reaching in the window without opening the door. The dome light was on in the car. As the seat moved the shotgun became visible under and behind the front seat. Officer Kopp opened the back door and reached for the gun from his standing position with his head bent forward and down. Both defendants then were arrested without a warrant for investigation of violation of federal firearms act.

Defendants contend that the search and seizure of the sawed-off shotgun were unlawful, relying on an inapposite line of authority.

The line of cases represented by Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637, relied on by defendants are factually distinguishable and are not in point.

■ In this case the information on which the investigatory sto·· of the automobile was made was provided by Wesley Turner, an eyewitness victim of an attempt by defendant Leonard B. Brody to coerce him to participate as conspirator and principal in an armed robbery. Under these circumstances there was no need to prove the reliability of the informant before stopping the automobile and making a warrantless search for the sawed-off shotgun reported (and found) under the front seat. Orricer v. Erickson (C.A.8) 471 F.2d 1204; United States v. Bell (C.A.5) 457 F.2d 1231; McCreary v. Sigler (C.A.8) 406 F.2d 1264. The right, under exigent circumstances, to make a warrantless search of a motor vehicle on the basis of a reasonable belief that it contains instrumentalities or fruits of crime is established by the following controlling cases, among others: Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419, rehearing denied, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, and Carpenter v. Sigler (C.A.8) 419 F.2d 169.

■ Furthermore, the reliability of the informant was established by the proven prior relationship of the informant with Patrol Officer Nicks (and his friend, and informal police officer liaison, Officer DeGraffenreid), who had given him his card with a special written request thereon introducing him to other officers, and affording an opportunity for police officer assistance in case of need. This introduction was used when Wesley Turner called for help and to report his eyewitness account of the criminal possession of the sawed-off shotgun in the automobile by the defendants.

■ Further, the accurate eyewitness description of the Cadillac, its occupants and the area in which it could be found, by Turner, broadcast over the police radio, provided a circumstantial reliability to the information, justifying an investigatory stop and search. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. Further, Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L. Ed.2d 612; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, furnish additional authority supporting the conclusions and are particularly in point.

The facts of this case are much more favorable to the government than in any of the cases relied on.

For the foregoing reasons, it is hereby

Ordered that the defendants' motions to suppress evidence be, and they are hereby, denied.