STATE OF HAWAII, Plaintiff-Appellant, *v.* NARCISSO
AUSTRIA, Defendant-Appellee, (Cr. Nos. 4433 and
4434), and FREDERICO DERIZA, et al., Defendants-
Appellees, (Cr. No. 4435)

NO. 5568

JULY 11, 1974

RICHARDSON, C.J., LEVINSON,
KOBAYASHI, OGATA and MENOR, JJ.

566

OPINION OF THE COURT BY LEVINSON, J.

The sole question in this appeal is the sufficiency of a police officer's affidavit to support a search warrant. The defendants were charged with the offense of Promoting Gambling in the Second Degree, HRS § 712-1222 (Supp. 1973). They moved to suppress evidence of the charged offense which had been seized pursuant to a search by search warrant of an alleged illegal gambling establishment. The circuit court found a lack of probable cause to support the search warrant, and ordered suppression of all evidence resulting from the warrant's execution. From this order the State appealed. We find that the affidavit presented to the district judge who issued the warrant supports his finding of probable cause, and therefore we reverse the circuit court's suppression order.

The affidavit for a search warrant was made by Sergeant William Loeffler of the Hawaii Police Department, County of Hawaii. It recites his belief that at a specified location "gambling activities are being conducted in which cards and dice are being used and United States monies are being won and lost, gambling paraphernalia is being exhibited and someone receives something of value or any profit other than as a player." In support of this allegation, the affidavit states "[t]hat during the month of April, 1973, a reliable confidential informer met with your Affiant and informed your Affiant that gambling activities were taking place regularly on Fridays, Saturdays and Sundays during the night time" at the suspect location. After asserting that the informer "personally observed and participated in the gambling activity on *several occasions*" (emphasis added), the affidavit recites fully the informer's detailed description of the premises, the type of gambling activity alleged, and the names of some of the participants. It avers that the informer participated in the gambling activities "during the month of April, 1973, the exact *date* not[] stated as the identity of the informer might then be known," (emphasis added), but continues "[t]hat on

the *days* that the informer stated that he went into the area hereinbefore described, your affiant went to the area on at least *two* occasions and . . . observed the said informer entering the home described and four persons known to be gamblers entering and leaving the area, the time being between 9:30 PM and 3:00 AM.'' (Emphasis added).

To substantiate the informer's reliability and credibility, the affidavit asserts that the informer ''has on at least four occasions given the police correct information concerning law violations which have been proven correct and accurate upon independent verification.'' The informer's past tips, according to the affidavit, had ''led to the arrest of over 20 persons for crime violations.''

Sergeant Loeffler subscribed to the affidavit on April 22, 1973, and the search warrant it supports was issued and executed the same day.

In our recent decision, *State v. Davenport*, 55 Haw. 90, 98, 516 P.2d 65, 71 (1973), we admonished that a reviewing court ''should accord considerable weight to the admittedly unbiased judgment of the district magistrate [now district judge] who issue[s a search] warrant . . . in order to encourage police officers, whenever possible, to present their cases for arrests or searches to impartial judicial officers *before* taking action.'' This rule of review, as *Davenport* suggests, finds its roots in the preference for warrant practice expressed in the federal and state constitutions. *United States v. Ventresca*, 380 U.S. 102, 105-09 (1965). If its policy of encouraging the police to apply for warrants is to be furthered, its disapproval of a ''grudging or negative attitude by reviewing courts toward warrants,'' *id.* at 108, must speak to circuit court review of warrants in suppression hearings no less than to appellate review of warrants by this court.

We are mindful of the responsibility of the judiciary in this State to resist erosion of the constitutional right to privacy. To this end, this court has never hesitated to subject assertedly unreasonable police searches to rigorous judicial scrutiny. *See, e.g., State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974). Yet insofar as the record of a case reveals a ''substantial basis'' for a district judge's conclusion of probable cause in

warrant proceedings, a reviewing court would be remiss in its important obligation to encourage the use of warrants were it to undertake an independent view of the facts. *Jones v. United States*, 362 U.S. 257, 270 (1960); *see Skelton v. Superior Court*, 1 Cal. 3d 144, 460 P.2d 485, 81 Cal. Rptr. 613 (1969). Of course, conclusory allegations of criminal activity cannot substitute for facts to that effect, even in warrant proceedings. But if the facts contained in an affidavit, taken together with all reasonable inferences from those facts, support the existence of probable cause, circuit courts and this court are constrained to uphold that finding by a district judge even though other inferences from the facts might point to an opposite conclusion. *See State v. Appleton*, 297 A.2d 363 (Me. 1972).

With these general guidelines for review in mind, we proceed to the facts of the present case. It is undisputed that the informer's allegation of illegal gambling activity was necessary to form the essential elements of probable cause. This being the case, as we held in *State v. Davenport, supra* at 93, 516 P.2d at 68, in order for a finding of probable cause to be sustained:

> [U]nder the constitutionally mandated test of *Aguilar v. Texas*, 378 U.S. 108, 114 (1964) the affidavit must set out some of the underlying circumstances from which the informant concluded that the [contraband was] where he claimed [it was], *and* some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was "credible" or his information "reliable."
>
> (emphasis added) [citations omitted].

With respect to the second, or "reliability" prong of the *Aguilar* test, we held in *Davenport* "that in citing that the informer's prior tips led to the discovery of illegal drug activity on at least eleven occasions and at least seven *arrests and prosecutions*, the affidavit established the informer's credibility to such a degree that the district judge could properly conclude that his tip was 'probably' accurate." 55 Haw. at 97, 516 P.2d at 70 (emphasis added). We expressly rejected the contention that to establish a record of reliability sufficient

for probable cause standards an informer's past tips need to have resulted in convictions. We reiterate that view here. The crucial consideration is whether the affidavit sets forth facts to show that the affiant is justified in believing the informer's allegations of criminal activity. In this case, the informer was said to have given four prior tips which had been proven correct upon subsequent investigation and which had led to the arrest of over twenty individuals. We agree with the court in *United States v. Shipstead,* 433 F.2d 368, 372 (9th Cir. 1970), that "[p]resumably the law has been obeyed and the arrests were based on probable cause which the officer states was supplied, at least in part, by the informant." Such independent verification in fact of the informer's prior tips gives rise to a legitimate expectation that his present information is credible notwithstanding a lack of convictions or prosecutions resulting from the prior tips. Many considerations "having nothing to do with the truth and dependability of the informer's story" may abort prosecutions or convictions, and "it would be highly technical and unnecessary" to require these results as an indispensable element for a showing of informer reliability. *United States v. Colon,* 419 F.2d 120, 122 (2d Cir. 1969). We note additional, but superfluous, support for the informer's reliability in this case contained in the assertion in the affidavit that on two of the occasions on which the informer stated that he participated in illegal gambling activities, the affiant personally observed the informer as well as others "known to be gamblers" entering the suspect locale — a fact which tends to show that at least the informer did not lie about entering the suspect locale on the nights indicated to Sergeant Loeffler.

The affidavit similarly establishes the *Aguilar*-required "underlying circumstances" upon which the informer based his assertion of illegal gambling activity. The affidavit's representation that the informer "personally observed and participated in the gambling activity on several occasions" is all that is required under this first prong of the *Aguilar* test, as we squarely held in *State v. Davenport, supra* at 95, 516 P.2d at 69.

Nonetheless, the defendant makes the final argument

that the tip upon which the affidavit and warrant were premised was too remote in time from April 22, 1973 to justify a finding of probable cause on that date. To support this charge of staleness, the defendant points out that the affidavit states that on only one unspecified "date" in April, 1973, did the informer observe and participate in illegal gambling activities at the searched premises; that the other "occasions" of informer observation and participation noted in the affidavit could have been at any time in the remote past; that the search warrant was issued on April 22, 1973 — in theory as many as twenty-one days after the alleged "date" of informer participation in that month —; that this possible twenty-one day delay renders stale the informer's information and hence negates any otherwise permissible conclusion of probable cause.

We are in unqualified agreement with the defendant that it is "fundamental that the element of time is crucial to the concept of probable cause." *United States v. Johnson,* 461 F.2d 285, 287 (10th Cir. 1972). We disagree with him, however, on the application of that fundamental to the facts of this case. If there is a reasonable basis in the affidavit for the conclusion that the criminal activity alleged by the informer is of a continuing, ongoing nature, the passage of time between the informer's last observations of that activity and the issuance of the warrant is less significant than when no such showing is made in the affidavit. *United States v. Harris,* 403 U.S. 573, 579 n.* (1971); *United States v. Johnson, supra* at 287; *Johnson v. State,* 14 Md. App. 721, 288 A.2d 622 (1972), *cert. denied,* 409 U.S. 1039 (1972).

Certainly the mere assertion in the affidavit in this case that "gambling activities were taking place regularly on Fridays, Saturdays and Sundays during the night time" standing alone does not justify the inference that the described activity was of a continuous nature. *See Commonwealth v. Eazer,* ___ Pa. ___, 312 A.2d 398, 400 (1973) ("Evidence, to demonstrate continuing conduct, must establish actual continuity of illegal enterprise. [citation omitted]. A police officer's unsubstantiated impression that a particular crime is of the sort which usually is continuing is not sufficient"). However,

there is evidence in the affidavit to support a finding that the conduct described was of a continuing nature. It includes: (1) the informer's claim that he personally observed and participated in the conduct on "several occasions," which, read in conjunction with the claim that the conduct was performed regularly on three nights a week and the claim that the informer observed and participated in it at least once in April, 1973, gives rise to a reasonable inference that all the observations and participations occurred on the alleged regular nights in close proximity to the month of April, 1973, *see United States v. Holliday,* 474 F.2d 320, 322-23 (10th Cir. 1973); (2) Sergeant Loeffler's statement that he personally observed the informer entering the searched premises on *two* occasions on which the informer alleged illegal gambling activity, which, read in conjunction with the statement that the informer first contacted Loeffler in April, 1973, gives rise to a reasonable inference that the informer observed and participated in illegal activity on at least *two* of the alleged regular nights in April, 1973, and not just one, as a literal reading of the affidavit might suggest; and (3) the type of gambling activity precisely detailed in the affidavit, which is in the nature of an ongoing gambling enterprise rather than an occasional and isolated social game. *Compare Johnson v. State, supra, with Roberts v. State,* 506 P.2d 613 (Okla. Crim. 1973).

In light of the facts contained in the affidavit, and the reasonable inferences to which they are susceptible, we conclude that there was a "substantial basis" for the district judge's conclusion that the illegal activity described in the affidavit was of a continuing nature. Given this support, the possible delay of twenty-one days between the informer's last observations of gambling and the issuance of the warrant does not vitiate the otherwise permissible finding of probable cause on April 22, 1973. *See United States v. Harris, supra* at 579 n.* (possible two-week delay); *People v. Dolgin,* 415 Ill. 434, 114 N.E.2d 389 (1953) (49-day delay); *Johnson v. State, supra* (26-day delay).

The order of suppression is reversed and the cases are remanded for trial to the circuit court.

*Paul M. De Silva*, Prosecuting Attorney, County of Hawaii, for plaintiff-appellant.

*Steven K. Christensen* for defendants-appellees.