STATE OF HAWAII, Plaintiff-Appellant, *v*. THOMAS DOMINGO DECANO, JR., HERBERT N. NAONE, JR., and DENNIS HAUOLI NAONE, Defendants-Appellees

NO. 6010

DECEMBER 21, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

206

OPINION OF THE COURT BY RICHARDSON, C.J.

Defendants-appellees, Thomas Decano, Jr., Herbert Naone, Jr. and Dennis Naone, were indicted by the Kauai Grand Jury for 25 counts of Robbery in the First Degree. Defendants filed a motion to quash the indictment claiming prejudicial misconduct of a government witness at the grand jury proceedings. In the same pleading, defendants moved to suppress certain evidence on the grounds that the affidavit supporting the search warrant which resulted in seizure of the evidence was insufficient for a showing of probable cause. Both motions were argued on September 12, 1975, at the same hearing and the circuit court rendered an oral decision, first granting the motion to quash and then granting the motion to suppress. The written order granting the motion to quash was entered on September 22, 1975, while the written order granting the motion to suppress was entered one week later on September 29, 1975.

The State appeals from the suppression order, urging two grounds for reversal. First, the State contends that since the motion to quash was granted first, the circuit court lacked jurisdiction to grant the motion to suppress. Secondly, the State argues that the facts contained in the affidavit support-

ing the search warrant were sufficient to establish probable cause. While we are not convinced by the State's first argument, we agree that the affidavit in this case was sufficient to support a search warrant and therefore reverse the suppression order.

## I. JURISDICTION TO GRANT MOTION TO SUPPRESS.

The State contends that once the indictments against the defendants were quashed, the circuit court lacked the jurisdiction to grant the motion to suppress. In this case, both the motion to suppress and the motion to quash were raised in the same pleading, were argued at the same hearing and were orally granted within seconds of one another. We are of the opinion that since they were simultaneously pending, the circuit court had jurisdiction to dispose of both motions.[1]

---

[1] We do not decide whether a different result would obtain if the motion to suppress had been raised *after* the motion to quash had been granted or if no indictment had been brought. However, we note that a substantial body of precedent establishes that *federal* district courts have the power to order the suppression or return of unlawfully seized property even though no indictment has been returned and thus no criminal prosecution is in existence. *See, e.g.,* Richey v. Smith, 515 F.2d 1239 (5th Cir. 1975); Hunsucker v. Phinney, 497 F.2d 29 (5th Cir. 1974); In re Grand Jury Proceedings, 450 F.2d 199 (3rd Cir. 1971), *aff'd sub nom.,* Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L. Ed. 2d 179 (1972); Centracchio v. Garrity, 198 F.2d 382 (1st Cir. 1952). *See also* United States v. The Merchant Diamond Group, 565 F.2d 252 (2d Cir. 1977). The federal district court's jurisdiction is viewed as an exceptional one, based upon the inherent authority of the court over its officers. As the Fifth Circuit Court of Appeals has observed:

> [S]uch jurisdiction should be exercised with "caution and restraint," and "subject to equitable principles." The applicability of equitable principles is the same whether the . . . action is viewed as one brought under Rule 41(e), F.R.Crim. P., or as one premised on the equity jurisdiction of the District Court. In either event the theoretical basis of jurisdiction to order pre-indictment return or suppression is grounded in the court's supervisory power over its officers . . . Rule 41 "is a crystallization of a principle of equity jurisdiction. That equity jurisdiction persists as to situations not specifically covered by the Rule. Alternatively the same result can be reached by a broad reading of the Rule." [Citations omitted.]

Hunsucker v. Phinney, supra at 34. At the time of trial in the *Hunsucker* case, Rule 41(e) of the Federal Rules of Criminal Procedure was identical to Rule 41(e) of the Hawaii Rules of Criminal Procedure. Since that time both the Hawaii and Federal Rules have been revised.

Although the written orders were entered one week apart, we feel that the mere timing of the orders was not determinative of the court's jurisdiction. This may have been a procedural irregularity, but we fail to see that it rose to the level of a jurisdictional defect sufficient to divest the court of its power.

## II. SUFFICIENCY OF THE AFFIDAVIT.

The affidavit in this case was made by Detective Sergeant Bernard Naea of the Kauai Police Department. It requested a warrant to search the residence of Mr. and Mrs. Alexander Youn for a brown suitcase believed to contain articles used in a robbery. As a basis for this belief, the affidavit recites:

> That affiant on May 12, 1975, investigated a Robbery complaint at "Cabitch Camp" or "Riverstreet" at the residence of one Simeon Carinio, fronting Kuhio Highway, in Waipouli, County of Kauai, State of Hawaii, and learned that unknown amounts of U.S. currency were taken by use of force from known gamblers who frequent the "Riverstreet" establishment by three masked individuals wearing dark-colored trenchcoats and armed with deadly weapons, to-wit: shotgun and handgun.
>
> That affiant, based on an eye-witness at the scene, was able to learn that the driver of the get-away car was one Dennis Naone.
>
> That affiant, as a result of his investigation, learned that Dennis Naone on May 12, 1975, together with Herbert Naone and Thomas Decano, slept at the home of Mr. and Mrs. Alexander Youn, Sr., at the above-described premises.
>
> That affiant, on May 15, 1975, spoke with Alexander Youn, Sr., owner of the four-bedroom residence, peach in color, on Kamalu Road, Wailua Homesteads, County of Kauai, State of Hawaii, Tax Map Key 4-2-003-0023, who related that on May 12, 1975, Dennis Naone, Herbert Naone and Thomas Decano, with his permission, were overnight guests who left the following morning for Honolulu on Hawaiian Airlines. Upon his departure, Dennis

Naone requested that he be permitted to leave, for approximately a week, a suitcase, brown in color, that he brought with him on May 12, 1975.

District Judge Kei Hirano issued the search warrant on May 15, 1975, and it was executed that day. Among the articles contained in the suitcase seized from the Youn residence were three ski masks, a shotgun, a revolver, and some ammunition.

Under the safeguards of the Fourth Amendment to the Federal Constitution and Article I, § 5 of Hawaii's Constitution, a search warrant may not issue except upon a finding of probable cause supported by oath or affirmation.[2] It has been firmly established by our decisions and those of the United States Supreme Court that probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense had been committed. *Carroll v. United States*, 267 U.S. 132, 162 (1925); *State v. Davenport*, 55 Haw. 90, 516 P.2d 65 (1973); *State v. Gustafson*, 55 Haw. 65, 515 P.2d 1256 (1973). It is clear that only the probability, and not a prima facie showing, of criminal activity is needed to establish probable cause. *Beck v. Ohio*, 379 U.S. 89, 96 (1962).

In granting the motion to suppress in this case, the circuit court indicated that it felt that certain language in the affidavit was not sufficient *in and of itself* to show probable cause.[3] The language which troubled the court was the one sentence paragraph in which the affiant stated that "based on an eye-witness at the scene, [affiant] was able to learn that the driver of the get-away car was one Dennis Naone." This

---

[2] Under Rule 41(c), Hawaii Rules of Criminal Procedure (1960), which was in effect at the time of the district court's probable cause hearing in the instant case, a search warrant could be issued only upon a sworn affidavit establishing the grounds for issuance of the warrant. Current Rule 41(c), Hawaii Rules of Penal Procedure, contains a nearly identical provision.

[3] Transcript of Hearing on Motion to Quash Indictment and Motion to Suppress Evidence, Cr. No. 1587, September 12, 1975, p. 38.

sentence is the only statement in the affidavit directly linking any of the defendants to the robbery.

Probable cause for issuance of a search warrant may, of course, rest on reasonably trustworthy hearsay. However, when an affiant seeking a search warrant relies on hearsay, he or she must, pursuant to the two-prong test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed. 2d 723 (1964), first set forth in the affidavit "some of the underlying circumstances" from which the informer drew the conclusion regarding criminal activity and secondly, disclose some of the reasons which led the affiant to believe that the informer was credible *or* the information reliable. *State v. Davenport, supra* at 93.

Increasingly, courts have recognized that the *Aguilar* test was directed to the particular problems of professional informers and should not be applied in a wooden fashion to cases where the information comes from a victim of or witness to a crime. *United States v. Rollins*, 522 F.2d 160 (2nd Cir.), *cert. denied*, 424 U.S. 918 (1976); *United States v. Bell*, 457 F.2d 1231 (5th Cir. 1972); *McCreary v. Sigler*, 406 F.2d 1264 (8th Cir. 1969); *Saunders v. Commonwealth*, 218 Va. 294, 237 S.E.2d 150 (1977); *Holt v. State*, 348 So. 2d 434 (Miss. 1977); *State v. Kurland*, 130 N.J. Super. 110, 325 A.2d 714 (1974); *King v. State*, 16 Md. App. 546, 298 A.2d 446 (1972).

Thus, some courts have held that the second prong of the *Aguilar* test, requiring that the reliability of the information or the credibility of the informers be shown in the affidavit, is inapplicable in situation where the "informer" is a private citizen eyewitness. *United States v. Bell, supra; State v. Kurland, supra*. Other courts have held that information given by an eyewitness is presumed reliable because the simple fact of being an eyewitness gives reasonable assurance of trustworthiness. *McCreary v. Sigler, supra; Saunders v. Commonwealth, supra*. For instance, in *King v. State, supra* at 555, 298 A.2d at 451, the court examined the reliability of an unidentified eyewitness at the scene of a robbery:

> In measuring this unnamed and disinterested witness against the standard of *Aguilar*, it is obvious that Officer Lucas knew absolutely nothing about his inherent credi-

bility — his integrity — his reputation or his status as a truth-speaker. His demonstrable "credibility" was "absolute zero." The "veracity" prong of *Aguilar's* "two-pronged test" is, however, significantly phrased in the disjunctive. Even knowing nothing about the inherent "credibility" of a source of information, we may yet inquire, "Was the information furnished under circumstances giving reasonable assurances of trustworthiness?" If so, the information is "reliable," notwithstanding our total ignorance as to its source's "credibility."

We agree with the court's analysis in *King, supra.* In the typical police informer situation, a showing of informer credibility or reliability of the given information is required in order to prevent searches based upon an unknown informer's tip that may represent nothing more than idle rumor or irresponsible conjecture. But an ordinary citizen who witnesses a crime stands on much different ground than the usual police informer. A citizen eyewitness acts with the intent to aid the police in law enforcement and receives no remuneration or concession for providing information. An informer of this type usually has only one opportunity to supply information to the police, thereby precluding proof of credibility by pointing to previous accurate information.

In this case, information was provided by an "eyewitness at the scene of the crime." No other data is given in the affidavit which would establish the eyewitness' credibility. However, as held in *McCreary, supra, Saunders, supra,* and *King, supra,* we are of the opinion that information given by an eyewitness is presumed reliable because the simple fact of being an eyewitness gives reasonable assurance of trustworthiness.

A more difficult question raised by this affidavit is whether the disputed statement met the first, or "underlying circumstances," prong of the *Aguilar* test. It is contended that the affidavit is deficient because it does not state the underlying facts upon which the eyewitness based his conclusion that the driver of the get-away car was Dennis Naone. Indeed, as appellees point out, from the language of the statement, it could be argued that Detective Naea, rather

than the eyewitness, drew the conclusion that Dennis Naone drove the get-away car.

However, we are persuaded that the statement is minimally sufficient to satisfy the first prong of the *Aguilar* test. In *State v. Davenport, supra,* we held that where the conclusion that illegal activity was being conducted was based upon the informer's personal observation, the first prong of the *Aguilar* test was met. *Accord, State v. Kaukani,* 59 Haw. 120, 577 P.2d 335 (1978); *State v. Delaney,* 58 Haw. 19, 563 P.2d 990 (1977); *State v. Austria,* 55 Haw. 565, 524 P.2d 290 (1974). The informer in this case was an eyewitness who *personally* observed the commission of the crime. The affiant's statement is inartfully drafted, but we believe that the district court judge could have reasonably drawn the inference that the eyewitness identified Naone by name. The better practice in reporting an eyewitness' observations would be to set forth the exact words used by the eyewitness. However, affidavits for search warrants are "normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *United States v. Ventresca,* 380 U.S. 102, 108 (1965).

Other facts brought out by the police investigation and set forth in the affidavit supported the information that Dennis Naone was the driver of the get-away car. The day of the robbery, Dennis Naone and two other men had been on the island of Kauai and spent the night at the Alexander Youn residence. Although the affidavit does not explicitly state so, it implies, and the district court judge could have reasonably inferred, that the three men were not residents of Kauai but merely visitors. Upon departing for Honolulu the day after the robbery, Naone requested and received permission to leave a brown suitcase at the Youn residence. All of these facts, combined with the identification of Naone by the eyewitness, presented a sufficient basis for a finding of probable cause.

Admittedly, the affidavit here was poorly drawn. However, we have previously stated that if the "facts contained in an affidavit, taken together with all reasonable inferences from those facts, support the existence of probable cause,

circuit courts and this court are constrained to uphold that finding by a judge even though other inferences from the facts might point to an opposite conclusion." *State v. Austria, supra* at 568, 524 P.2d at 293. It is also well settled that affidavits for search warrants should be tested and interpreted by courts in a common sense and realistic fashion and without a grudging or negative attitude. *State v. Kaukani, supra; State v. Austria, supra; United States v. Ventresca, supra.* Moreover, this court is particularly mindful of the rule that great deference should be accorded to a district court judge's finding of probable cause. Thus, in light of these principles of review and guided by the preference to be accorded to search warrants, we reverse the suppression order.

Reversed.

*Gerald S. Matsunaga,* Prosecuting Attorney, and *Calvin K. Murashige,* Deputy Prosecuting Attorney, for Plaintiff-Appellant.

*David C. Schutter (Schutter O'Brien & Weinberg,* of counsel) for Defendants-Appellees.