Argued July 23, reversed August 21, petition for rehearing denied
October 13, petition for review denied December 8, 1970

# STATE OF OREGON, *Appellant, v.*
# ALBERTO SILVIO DIAZ, *Respondent.*

### 473 P2d 675

*Jacob B. Tanzer*, Solicitor General, Salem, argued the cause for appellant. With him on the brief was Lee Johnson, Attorney General, Salem.

*John S. Marandas*, Portland, argued the cause for respondent. With him on the brief were Lekas, Dicey & Sherwood, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FORT,* Judges.

SCHWAB, C.J.

This is an appeal by the state pursuant to ORS 138.060 (4) of a pretrial order in a criminal case suppressing as evidence the fruits of a search, dismissing the case, and rendering judgment for the defendant. Defendant had been charged in a two-count indictment with illegal possession of narcotics, namely, heroin and marihuana.

---

* Fort, J., did not participate in this opinion.

The question raised by this appeal is that of the existence of probable cause for the search.

On the afternoon of May 22, 1969, Officer Boggs of the Narcotics Division of the Portland Police Bureau received a phone call from an informant. He had spoken to the informant on about 50 occasions over the preceding 18 months, almost always about narcotics matters. On each occasion when the information could be investigated, it proved to be correct. At least four narcotics arrests had been made based upon his information. The informant was known to be familiar with heroin and with the heroin traffic.

Also, the officer had been investigating the narcotics traffic at Lair Hill Park for two years and he knew that at that particular time the narcotics traffic was heavy there.

The informant said that he saw a young, thin Negro male driving a car about Lair Hill Park. He described the color, model and license number of the car, although the license number turned out to be one digit off.

The informant said he had just seen the subject in possession of heroin together with some people known as heroin users. Specifically, he said he saw what appeared to be heroin in the subject's hands.

Officer Boggs gathered together a team and left the police station for Lair Hill Park. Within 15 to 20 minutes after their departure, defendant's car was seen at an intersection at a corner of Lair Hill Park. The car and the defendant matched the descriptions given by the informant. Altogether, about two hours had passed since the receipt of the call from the informant.

The car was signaled over and the defendant

ordered out of it. Officer Boggs recognized defendant as a person he had seen talking to various people in Lair Hill Park on the day before the search. At least one of them was known to the officer as a heroin addict. Also, the officer had received telephone calls from an anonymous individual about defendant, one of which asserted that he was involved in narcotics traffic.

No consent to search was sought or obtained. No warrant had been issued. Officer Boggs believed that there would be heroin in the car or on defendant's person. He began searching the car as the defendant stood by. Within five minutes he found in a compartment beneath the radio a crushed cigarette package which had within it a plastic bag with white powder. A Marquis reagent field test showed the powder to be positive for opiates. At that point the defendant was arrested for illegal possession of narcotics and taken to the police station.

Thereafter the search continued (either at the scene or at the police station—the record is not clear) into the trunk of the car. There Officer Boggs found a bottle, some apparent marihuana seeds and some cigarette papers which were also seized.

■ The trial court, in suppressing the evidence seized, specifically indicated that it did not question the credibility of Officer Boggs. All of the facts stated above are taken from Officer Boggs's testimony. These facts constituted adequate justification for the search. In *McCray v. Illinois*, 386 US 300, 87 S Ct 1056, 18 L Ed 2d 62 (1967), an informant with a history of reliable information told the officers that the defendant would be in a particular vicinity and would have narcotics on his person. The police immediately pro-

ceeded to that area, found the defendant, told him that they had information that he had narcotics on his person and searched him. They found heroin in a cigarette package on his person. The United States Supreme Court held that:

> "There can be no doubt, upon the basis of the circumstances related [by the officers], that there was probable cause to sustain the arrest and incidental search in this case. * * * [A]t the time the officers made the arrest 'the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense * * *'." 386 US at 304.

The same result was reached on similar facts in *Draper v. United States*, 358 US 307, 79 S Ct 329, 3 L Ed 2d 327 (1959).

■ The only conceivable distinction is that in *McCray* the police searched the defendant's person, in *Draper* they searched his valise, and in the case at hand they searched his automobile. An automobile is no more sacrosanct than a person. Cf. *Carroll v. United States*, 267 US 132, 45 S Ct 280, 69 L Ed 543, 39 ALR 790 (1925); *State v. Keith*, 2 Or App 133, 465 P2d 724 Sup Ct *review denied* (1970).

■ Defendant argues at some length that the informant did not state categorically to Officer Boggs that the defendant had narcotics on his person, but instead said he had "what appeared" to be or "looked like" heroin in his hand. This is a play on words. Only a laboratory technician can positively affirm that a substance that appears to be heroin is in fact heroin.

■ Defendant also argues that the search was invalid because it preceded the actual arrest. In *McCray*

and *Draper* the United States Supreme Court did not look to whether the search preceded the arrest or not. In each case the search and arrest were interrelated into one substantially simultaneous transaction which could be justified as a search incident to arrest. In *State v. Murphy,* 3 Or App 82, 471 P2d 863 (1970), we held that the right of police to search without a warrant is a right not solely dependent on a prior or contemporaneous arrest, and that the relevant issue is not whether an arrest was made but whether a warrantless search was based on probable cause.

■ Clearly the police had probable cause as that term is defined in *State v. Keith,* supra, to believe that the defendant had heroin on his person or in his automobile. This being the case, they had the right to search the automobile without taking the time to seek a search warrant.

> "Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' [Citing cases.]" *Chimel v. California,* 395 US 752, 764, 89 S Ct 2034, 23 L Ed 2d 685, n 9 (1969).

See also *Brinegar v. United States,* 338 US 160, 69 S Ct 1302, 93 L Ed 1879 (1949); *Carroll v. United States,* supra; *State v. Keith,* supra.

■ The defendant argues that even if the search of the interior of the car, which took place prior to the arrest and disclosed the heroin, was valid, the later search of the trunk, which took place after the defendant had been taken to the police station and which

disclosed the marihuana, was invalid because by that time the vehicle was securely in the hands of the police and its potential mobility was therefore no longer grounds for not taking the time to obtain a search warrant.

As we pointed out in *State v. Keith,* supra, a strong argument can be made that once an automobile has been adequately secured by the police, searches of normal places of privacy such as the glove compartment, trunk, etc., should be made only pursuant to a search warrant. We further said that we nevertheless could not so hold in the absence of a clear mandate from a higher court because of our Supreme Court's holding in *State v. McCoy,* 249 Or 160, 437 P2d 734 (1968), which authorizes such a search without a warrant. Not only is *State v. McCoy,* supra, still the law of Oregon, but since we handed down the *Keith* opinion, the United States Supreme Court in *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419, decided June 22, 1970, without mentioning *Chimel,* specifically authorized a warrantless search of an automobile after it had been seized and taken to a police garage.

Reversed.