UNITED STATES of America, Appellant, Plaintiff-Appellant,

v.

Joseph GIACALONE and One 1975 Mercury Four-Door Automobile, Maroon In Color, Bearing License Plate Number TMS 416, Appellee, Defendant-Appellee.

No. 75–2121.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 15, 1975.

Decided Aug. 18, 1976.

Frederick S. Van Tiem, U. S. Atty., Robert C. Ozer, C. Stanley Hunterton, Detroit Strike Force, Detroit, Mich., for the U. S.

N. C. DeDay LaRene, Detroit, Mich., for Giacalone.

Before PHILLIPS, Chief Judge, and WEICK, EDWARDS,* CELEBREZZE, PECK, McCREE, LIVELY and ENGEL, Circuit Judges, sitting en banc.

WEICK, Circuit Judge.

The Government has appealed from an order of the United States District Court for the Eastern District of Michigan granting a motion for return of seized property under Fed.R.Crim.P. 41(e). The seized property consisted of an automobile and its contents belonging to Joseph Giacalone. The automobile and contents were seized by the FBI pursuant to a search warrant issued by a United States Magistrate. The District Court held that the affidavit for the warrant submitted to the Magistrate did not allege sufficient facts to support the Magistrate's finding of probable cause. It granted the motion and ordered the automobile and contents returned to Giacalone. The Government seeks a reversal of that judgment. We reverse.

A temporary stay of the order of the District Court was granted by a Judge of this Court and it was later extended to run pending the appeal.

The affidavit for the warrant reads as follows:

JAMES C. ESPOSITO, being duly sworn according to law, deposes and states as follows:

I am a Special Agent of the FBI and I have been engaged since August 3, 1975, in an investigation into the disappearance and possible abduction of JAMES R. HOFFA (hereafter HOFFA).

The FBI has been informed by JAMES P. HOFFA, the son of HOFFA, that on July 30, 1975, and for some time prior thereto, HOFFA was engaged in a highly publicized campaign, to express his views and opinions in support of his own nomination and candidacy for the office of President of the International Brotherhood of Teamsters (IBT) a labor organization as defined by Section 152 of Title 29, United States Code. On July 30, 1975, HOFFA left his home in Lake Orion, Michigan, and traveled to the Machus Red Fox restaurant at Maple and Telegraph Roads in Bloomfield Township, Michigan, and he advised witnesses, who have in turn advised the FBI, the [sic] he intended to meet with ANTHONY GIACALONE and ANTHONY PROVENZANO. At approximately 2:30 p. m., July 30, 1975, HOFFA telephoned his wife and advised her that GIACALONE had not as yet arrived at the Red Fox for the said meeting. No member of HOFFA's fami-

* Judge Edwards recused himself from the decision in this case.

ly has seen him or heard from him since that time.

JAMES P. HOFFA has advised the FBI that HOFFA, his father, was definitely conscious of the possibility of physical harm from opponents of his in the labor movement and that HOFFA, as of July 30, 1975, was a member of the IBT. JAMES P. HOFFA has stated to the FBI that CHARLES L. J. O'BRIEN (O'BRIEN) is one of the small number of persons with whom HOFFA is acquainted and with whom HOFFA would willingly enter an automobile. JAMES P. HOFFA has advised the FBI that this is so notwithstanding the fact that O'BRIEN, who was raised in the HOFFA home as a son of HOFFA, has during the past several months aligned himself with ANTHONY GIACALONE with whom O'BRIEN has actively supported HOFFA's opponents and enemies in the labor movement. O'BRIEN is currently employed by the IBT at the pleasure of HOFFA's opponents in office.

As part of the FBI investigation during the past week, witnesses have advised the FBI that O'BRIEN vigorously claimed and insisted that at the time of HOFFA's disappearance during the afternoon of July 30, 1975, he (O'BRIEN) was with ANTHONY GIACALONE at the Southfield Athletic Club. Various witnesses, including the owner of the Southfield Athletic Club have denied that O'BRIEN was ever there on July 30, 1975.

On August 6, 1975, O'BRIEN admitted to Special Agents of the FBI that he (O'BRIEN), on July 30, 1975, borrowed from JOSEPH GIACALONE, a 1975 4-door Mercury Brougham automobile, maroon in color, which he (O'BRIEN) used to deliver a 40 pound frozen salmon to Mrs. ROBERT HOLMES, SR. in Farmington, Michigan, sometime between 12:00 p. m. and 1:00 p. m., and that he thereafter had the said automobile washed, O'BRIEN claimed, because blood from the salmon had stained the seat. Extensive interviews by the FBI have failed to identify anyone who has seen O'BRIEN during the period of approxi-

mately 2:20–2:30 p. m. on July 30, 1975, until "late afternoon" July 30, 1975, which is the only approximation that JOSEPH GIACALONE was able to provide to Special Agents of the FBI with respect to the time that day that O'BRIEN returned the automobile to GIACALONE.

The office of the Michigan Secretary of State has advised the FBI that there is listed as registered to Liftall Company, 2679 Conner, Detroit, Michigan, a 1975 Mercury four door automobile, license tag 1975 Michigan TMS 416. JOSEPH GIACALONE was interviewed on August 8, 1975, and acknowledged that he is the owner of Liftall Company and that he (JOSEPH GIACALONE) is the owner of the said 1975 Mercury 4-door automobile bearing license tag TMS 416. JOSEPH GIACALONE is known to me to be the son of ANTHONY GIACALONE.

JOSEPH GIACALONE was requested by Special Agents of the FBI, on August 8, 1975, to voluntarily permit a search of the said automobile for any evidence of fingerprints or microscopic. particles of blood, hair, clothing, fibers, or flesh which can be identified as that of a human being, or specifically as that of HOFFA, as well as any physical evidence indicating where the automobile has been. Counsel of JOSEPH GIACALONE has [informed] the FBI that no inspection of JOSEPH GIACALONE'S automobile will be permitted, except pursuant to a search and seizure warrant.

For all of the above reasons I feel that probable cause exists to believe that CHARLES O'BRIEN has used JOSEPH GIACALONE's automobile to facilitate an abduction of HOFFA; and that the said abduction constitutes the use of force and violence to restrain, interfere, and prevent HOFFA from exercising his rights to which he is entitled under Section 411, Title 29, United States Code; and that evidence of the said abduction, to wit, fingerprints and microscopic particles of blood, clothing, fibers, flesh, and hair which can be identified as that of a human being, or specifically that of HOF-

FA, as well as any physical evidence indicating where the automobile has been, is being concealed on the said 1975 4-door Mercury automobile, maroon in color, bearing license tag number TMS 416 registered to Liftall Company.

I represent that it is necessary to seize the said automobile as soon as it may be found, at any time during the day or night, in order to minimize the time during which evidence contained therein may be disturbed, deliberately or otherwise, now that JOSEPH GIACALONE is aware of FBI interest in that automobile. The FBI is currently unaware of the location of the said automobile although a search for it is in progress.

/s/ JAMES C. ESPOSITO
Special Agent, FBI

Subscribed and Sworn to Before Me this 8th Day of August, 1975.

/s/ BARBARA K. HACKETT
U. S. Magistrate

■ Before addressing the sufficiency of the affidavit we must examine the threshold question of mootness raised by appellee. This issue arose because a Grand Jury, which was investigating the disappearance of Mr. Hoffa and possible violations of federal law, issued a subpoena duces tecum for the automobile and it was served by the United States Marshal on the defendant after the District Court had entered its order for the return of the automobile to him. The order of the District Court had been stayed by this Court and the appeal ordered expedited. The purpose of the subpoena duces tecum is not clear to us as it would seem that the Government was adequately protected by our stay.

The theory for the subpoena duces tecum was that Giacalone had constructive possession of the automobile because of the order of the District Court even though it had been stayed. Enforcement of the subpoena duces tecum was procured in the District Court where Giacalone was charged with contempt for refusing to surrender his constructive possession, and finally he did surrender his constructive possession of the automobile in order to purge himself from the contempt. By reason of this unnecessary procedure a new issue was injected in this case, and it has delayed consideration of the appeal.

Giacalone argues that we should dismiss this appeal as moot; however, the granting of a Rule 41(e) motion serves not only to restore possession of seized property to its owner, but also serves as a ruling that the search and seizure of the property were illegal, and that the fruits of the search "shall not be admissible in evidence at any hearing or trial." Because the District Court's ruling will be binding on all courts in future criminal litigation, the consequences of the ruling reach beyond the issue of custody of the car; furthermore, this binding effect on future litigation requires that we review the ruling at this time rather than hold that the question is not ripe because Giacalone has not yet been indicted.

Turning to the affidavit for the warrant, we must confront the problem of defining what allegations are necessary therein to support a finding of probable cause. Most of the major pronouncements of the Supreme Court in recent years on the subject discuss the sufficiency of certain classes of allegations in affidavits.[1]

During the early years of the Constitution the Supreme Court did not seem troubled by the meaning of probable cause; Chief Justice Marshall wrote:

> [Probable cause] has a fixed and well-known meaning. It imports a seizure made under circumstances which warrant suspicion.

---

1. Thus in *Nathanson v. United States,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), the Court held insufficient an affidavit asserting only a suspicion or belief. In *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), an affidavit was held insufficient because it contained only conclusory statements. The Court dealt with the sufficiency of allegations based on hearsay from unnamed informants in several cases: *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

*Locke v. United States,* 11 U.S. [7 Cranch] 339, 348, 3 L.Ed. 364 (1813).

Today more than suspicion is required, *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1802, 93 L.Ed. 1879 (1949), because the word "suspicion" in its present usage would seem to permit a search upon a hunch.[2] The Court in *Brinegar* also stated that a showing of probable cause was unlike a showing of guilt:

> There is a large difference between the two things to be proved [guilt and probable cause], as well as between the tribunals which determine them, and therefore a like difference in the *quanta* and modes of proof required to establish them. (338 U.S. at 173, 69 S.Ct. at 1309)

▮ *Brinegar* thus teaches that probable cause is a showing of more than suspicion but less than guilt.

In *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), the Court made a further comment on the required contents of an affidavit, holding:

> [T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were.

While *Aguilar* dealt with the necessity of showing grounds for believing hearsay given by an unnamed informant, the requirement that a warrant state "some of the underlying circumstances" supporting the affiant's belief was adopted in reviewing an affidavit without the unnamed informant problem in *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). There the Court observed that the affidavit being reviewed contained "not merely 'some of the underlying circumstances' supporting the officer's belief, but a good many of them." *Id.* at 109, 85 S.Ct. at 746.

▮ Thus, after *Ventresca* it is apparent that an affidavit is sufficient if it shows some of the underlying circumstances supporting the affiant's belief which could lead a man of reasonable caution[3] to conclude that evidence that a federal crime had been committed will probably be found in the place sought to be searched.

▮ In *United States v. Harris,* 403 U.S. 573, 581, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), and *Rugendorf v. United States,* 376 U.S. 528, 533, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964), and *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the Court, in approving findings of probable cause, stated that there was a substantial basis in the affidavits for the findings. This language should not be construed to establish a "substantial evidence" standard of review as used by a court in reviewing the sufficiency of evidence in a criminal trial. Because substantial evidence is all that is required to support a verdict of guilty, and because a showing of probable cause requires less than a showing of guilt, it appears that a substantial basis exists when the affidavit shows some underlying circumstances which could lead a man of reasonable caution to conclude that evidence of a federal crime will probably be found in the place to be searched. The ambiguity of the "substantial basis" language in those decisions leads us to conclude that the phrase is a substitute term for the "underlying circumstances" test set out above.

▮ This Circuit has consistently held that once a Magistrate has found probable cause and has issued a warrant, his judgment is conclusive unless arbitrarily exercised, since the purpose of the Fourth Amendment has been served by his review of the affidavit. *United States v. Arms,* 392 F.2d 300, 302 (6th Cir. 1968); *United*

---

2. *Brinegar* involved a warrantless search. The Court in *Nathanson v. United States,* 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933), held that a search warrant affidavit must contain more than a statement of mere suspicion and belief to support a finding of probable cause.

3. This objective "man of reasonable caution" standard is found in *Brinegar v. United States,* 338 U.S. at 175–76, 69 S.Ct. 1302, and in *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and in *United States v. Nicholson,* 303 F.2d 330, 332 (6th Cir.), *cert. denied,* 371 U.S. 823, 83 S.Ct. 43, 9 L.Ed.2d 63 (1962).

*States v. Jordan,* 349 F.2d 107, 108 (6th Cir. 1965); *United States v. Haskins,* 345 F.2d 111, 113 (6th Cir. 1965); *United States v. Nicholson,* 303 F.2d 330, 332 (6th Cir.), *cert. denied,* 371 U.S. 823, 83 S.Ct. 43, 9 L.Ed.2d 63 (1962); *Evans v. United States,* 242 F.2d 534, 536 (6th Cir.), *cert. denied,* 353 U.S. 976, 77 S.Ct. 1059, 1 L.Ed.2d 1137 (1957).

The purpose of the probable cause requirement is not so much to establish a burden of proof as to require that searches be authorized by an impartial judicial officer. As stated in the often-quoted passage in *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948):

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

Thus, warrants are not to be read in a negative or hypertechnical manner, and great deference is to be given to the Magistrate's decision. *United States v. Ventresca,* 380 U.S. at 109, 85 S.Ct. 741.

A further reason for avoiding a hypertechnical or rigorous standard for reviewing a search warrant is that a finding of insufficiency of an affidavit leads to suppression of evidence. The suppression of evidence seized pursuant to a search warrant should not be treated lightly; in suppressing evidence the truth is suppressed, and an investigation into a crime is impeded. See *McCray v. Illinois,* 386 U.S. 300, 307, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

Finally, the need to interpret affidavits in a "common-sense and realistic fashion" is mandated by the fact that warrants are often sought on short notice for the purpose of preventing the destruction of evidence, and because, as stated in *United States v. Ventresca,* 380 U.S. at 108, 85 S.Ct. at 746.

> [Affidavits] are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.

In reviewing this affidavit the District Court stated two elements of proof which it found lacking and which it believed were necessary to establish probable cause. The Court stated first that it was necessary to show proof that the motive behind Hoffa's alleged abduction was to deny him his rights as a member of the Teamsters' Union, and second, that it was necessary to show proof that the automobile was used to abduct him. The problem with the District Court's position is that proof of the crime is supposed to be the result of a search, not a required precondition of the search. Deficiencies such as these might be significant in a criminal trial, or if the District Court were making a de novo determination of probable cause, but that determination was to be made by the Magistrate and not by the District Court.

In giving the Magistrate's judgment great deference, which the law requires even in a doubtful case, it is not the function of a reviewing court to state what elements of proof the Magistrate must consider indispensable in making his determination. There are no technical rules establishing a *quantum* of evidence necessary to support a finding of probable cause, nor are there rules requiring that the elements of a crime, or the sequential events of a crime, must be shown. The purpose of the reviewing court's inquiry is merely to determine from the facts set forth in the affidavit and the permissible inferences to be drawn therefrom whether the Magistrate's decision to issue the warrant was arbitrary because the affidavit contained no information which, if credited, was sufficient to establish probable cause.[4] These facts and

---

4. It appears that the difference between our view and that expressed in Judge Lively's dissent is not based upon different legal standards of review, but results from different conclu-

the "common sense" inferences which can be drawn therefrom (see *Ventresca*, 380 U.S. at 108, 85 S.Ct. 741) are discussed below.

Here, the affidavit for the warrant stated that Mr. Hoffa "was definitely conscious of the possibility of physical harm" from his union opponents. Such action would violate federal law.

■ On the afternoon of Hoffa's disappearance he went to meet with at least one of his opponents.[5] Another union opponent, who was one of a very few persons with whom Hoffa would willingly enter an automobile, borrowed a car from the son of the opponent whom Hoffa was to meet, and then disappeared. Three hours after Hoffa was last heard from this union opponent reappeared, having had the interior of the borrowed car cleaned to remove blood stains. His alibi was flimsy at best.[6] He failed to explain satisfactorily his own whereabouts after the time when Hoffa was last heard from. Hoffa had been missing for eight days when the affidavit for the warrant was filed. This was ample time to permit a foul-play inference which the Magistrate could properly draw.

These circumstances cannot be construed, just as easily, to support a finding that Hoffa took an unannounced vacation, or that he drove into the Michigan wilderness and committed suicide; rather, they clearly point to the probability that he was abducted in the automobile (here at issue) to prevent him from exercising his union rights. These circumstances would seem to call for a search of the automobile, and for a laboratory examination of its contents.

The FBI need not prove that Hoffa was abducted in order to procure a warrant to search the automobile; rather, it must search the automobile to obtain evidence that Hoffa was abducted.

None of the elements of the crime stated in 29 U.S.C. § 530 is conclusively established by this affidavit; however, we need only to look for facts supporting probabilities, for, as stated in *Brinegar*, 338 U.S. at 175, 69 S.Ct. at 1310, "in dealing with probable cause . . . we deal with probabilities."

The District Court ignored the evidence of probability appearing in this affidavit and the inferences properly deducible therefrom. The Court stated that the only evidence of interference with union rights was the statement that Hoffa was engaged in a struggle to regain the presidency of the union; but there is more. The affidavit implicates O'Brien, Joseph Giacalone and Anthony Giacalone, all of whom are connected with the Union and with opponents of Hoffa's campaign. Thus the very fact that they were involved is also an indication that the motive for the probable abduction was to prevent Hoffa's return to power in his union, a violation of federal law. To be sure, there are other possible explanations for the disappearance, but this motive virtually compels a finding of probability from the facts in the affidavit.

■ The District Court also dismissed the Government's claim as a mere theory, not proof. A theory is a hypothesis which is supported by some factual basis. In criminal cases the Court is required to instruct the jury on the theories of both the prosecution and the defense. The fact that the Government's theory had not yet been conclusively established does not negate a

---

sions as to what inferences can and should be drawn from the facts stated in the affidavit.

**5.** Unnamed witnesses informed the FBI that both Anthony Giacalone and Anthony Provenzano were to meet Hoffa. We recognize that this statement cannot support a finding of probable cause because the reliability of the witnesses has not been demonstrated; however, the affidavit also states that Hoffa's son said that Hoffa called home from the Machus Red Fox Restaurant and told his wife that Gia-

calone had not yet arrived. This statement is sufficient for purposes of a search warrant affidavit to establish the identity of the man whom Hoffa was to meet.

**6.** The Magistrate was entitled to consider the incredibility of the alibi. O'Brien told the FBI that he borrowed a friend's expensive, new automobile to deliver a huge fish to an acquaintance, and that blood from the fish stained the back seat of the automobile.

finding of probable cause. Probable cause can arise from facts which create a theory of how the crime was committed. The very facts which transform a hypothesis into a theory also transform suspicion into probable cause. A theory itself becomes fact only when proven in a criminal trial to the satisfaction of the jury.

When an affidavit states facts upon which a reasonable man could conclude that a theory of a crime is probably correct, a Magistrate's finding of probable cause cannot be rejected as arbitrary. It is not necessary that a set of facts eliminate all but one possible explanation in order to establish probable cause, so long as the theory advanced in the affidavit appears to be probably correct.

Other federal courts have found support for probable cause when the nexus between the evidence sought and the place to be searched is arguably equivocal, as in *United States v. Mulligan*, 488 F.2d 732 (9th Cir. 1973), *cert. denied*, 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974); *Edmondson v. United States*, 402 F.2d 809 (10th Cir. 1968); and *United States v. Scolnick*, 392 F.2d 320 (3d Cir.), *cert. denied sub nom. Brooks v. United States*, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968).

Similarly, probable cause for a policeman to make a warrantless arrest has been found in circumstances which arguably could support other explanations, as in *Brinegar, supra,* and in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).[7]

The District Court also stated that one condition of Mr. Hoffa's parole was that he would not run for office in the union for a period of fifteen years. The fact that he was running for union office in violation of his parole is irrelevant to the question of probable cause because it was not mentioned in the affidavit.

When a court is faced with a situation wherein there is at issue the *quantum* of evidence necessary to be alleged to support a finding of probable cause, and when the affidavit arguably shows circumstances which could support a determination that evidence of a federal crime will probably be found in the place to be searched, the court should follow the practice expressed in *United States v. Lewis*, 392 F.2d 377, 379 (2d Cir.), *cert. denied*, 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968):

> One of the best ways to foster increased use of warrants is to give law enforcement officials the assurance that when a warrant is obtained in a close case, its validity will be upheld.

We therefore apply the rule of *United States v. Haskins*, 345 F.2d 111, 113 (6th Cir. 1965), that the Magistrate's "determination is conclusive unless his judgment is arbitrarily exercised" and that there is "a presumption that a [Magistrate] has properly performed his duty."

Although the affidavit here is less than ideal, as was the affidavit in *United States v. Jenkins*, 525 F.2d 819 (6th Cir. 1975), a doubtful case is to be "governed largely by the preference which our legal system gives to warrants." *Id.* at 824.

We find that the affidavit contains sufficient facts to indicate that the Magistrate's finding of probable cause was not arbitrary.

The order of the District Court is reversed, and the Magistrate's finding of probable cause is affirmed.

LIVELY, Circuit Judge (concurring and dissenting) with whom Judges JOHN W. PECK and McCREE join.

I concur in the holding that this case is not moot, but respectfully dissent from the reversal of the judgment.

The judicial preference for warrants and for rules which encourage officers to seek

---

7. In *Brinegar* a heavily loaded car, driven by a suspected bootlegger, established probable cause to arrest, even though the heavy load could have been caused by a number of lawful activities. *Aguilar v. Texas*, 378 U.S. at 111, 84

S.Ct. 1509, teaches that probable cause to issue a search warrant can be based on a standard of proof lower than the standard of proof for probable cause to justify a warrantless arrest.

them instead of conducting warrantless searches is universally recognized. Thus it has been held that the determination of an impartial magistrate on the issue of probable cause is entitled to "great deference." *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Coury v. United States*, 426 F.2d 1354, 1356 (6th Cir. 1970). However, such a determination is not conclusive, but is subject to review under standards which have been variously stated by this court. In *Evans v. United States*, 242 F.2d 534, 536 (6th Cir.), *cert. denied*, 353 U.S. 976, 77 S.Ct. 1059, 1 L.Ed.2d 1137 (1957), we stated that the magistrate's determination of probable cause is "conclusive unless his judgment is arbitrarily exercised." *See also United States v. Nicholson*, 303 F.2d 330, *cert. denied*, 371 U.S. 823, 83 S.Ct. 43, 9 L.Ed.2d 63 (6 Cir. 1962); *United States v. Plemmons*, 336 F.2d 731 (6 Cir. 1964); *United States v. Gosser*, 339 F.2d 102, *cert. denied*, 382 U.S. 819, 86 S.Ct. 44, 15 L.Ed.2d 66 (6 Cir. 1964); *United States v. Jordan*, 349 F.2d 107 (6 Cir. 1965); *United States v. Arms*, 392 F.2d 300 (6 Cir. 1968); *DiPiazza v. United States*, 415 F.2d 99 (6 Cir. 1969), *cert. denied*, 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971).

The words "arbitrarily exercised" are not defined in our opinions. In *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the Supreme Court, in confirming that an affidavit for a search warrant may be based on reliable hearsay rather than personal knowledge of the affiant, stated the test for a magistrate's determination of probable cause as follows:

> But there was substantial basis for him to conclude that narcotics were probably present in the apartment, and that is sufficient. *Id.* at 271, 80 S.Ct. at 736.

Almost identical language was used in *Rugendorf v. United States*, 376 U.S. 528, 533, 84 S.Ct. 825, 828, 11 L.Ed.2d 887 (1964), where the Court said—

> We believe that there was substantial basis for the Commissioner to conclude that stolen furs were probably in the petitioner's basement. No more is required.

In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), in dealing with the general standard of review the Court said, "Thus, when a search is based upon a magistrate's, rather than a police officer's determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' *Id.* at 111, 84 S.Ct. at 1512 [quoting from *Jones v. United States, supra,* 362 U.S. at 270, 80 S.Ct. 725,] . . ." and then recited the language from *Jones* previously quoted which established the "substantial basis" test.

It thus appears that a reviewing court may not hold that a magistrate's judgment has been arbitrarily exercised if there is substantial basis for the magistrate to conclude that the property to be searched will probably produce evidence of the crime described by the one seeking the warrant. This is precisely what I find lacking in the affidavit in the present case. Though the affidavit recites an abundance of detail which formed the "underlying circumstances" that led the FBI agent to seek the warrant, it appears to me that a substantial basis for his conclusion that the automobile of Joseph Giacalone was involved in the disappearance of James R. Hoffa is lacking.

This conclusion that the affidavit is deficient does not result from a "hypertechnical, rather than a commonsense" approach. Even conceding the probability that the unexplained disappearance of James R. Hoffa resulted from an abduction engineered by his enemies in the International Brotherhood of Teamsters, this is not enough. There must be some link between this assumed federal crime and the automobile of Joseph Giacalone. When the affidavit is read as a whole it is clear that the activities of O'Brien on July 30, 1975 are relied upon to supply the connecting link. However, I find completely tenuous the conclusion that Charles O'Brien probably used the automobile of Joseph Giacalone to abduct James R. Hoffa. It is possible, of

course, that this did occur, but the facts recited in the affidavit do not supply the probability that is required. Though O'Brien did borrow the automobile of Giacalone on the day of the disappearance, the affidavit fails to place O'Brien or the automobile at any place where Hoffa was said to be on that day. The government contends the magistrate could take judicial notice of the fact that Farmington, Michigan is about a ten-minute drive from the Machus Red Fox restaurant where Hoffa had gone. Nevertheless, the affidavit places O'Brien at Farmington between only 12:00 noon and 1:00 p. m., which was at least one and one-half hours before Hoffa disappeared. There is absolutely nothing to indicate that Hoffa and O'Brien were in the same vicinity after 2:30 p. m., when Hoffa was last heard from. The statement that the affiant "feels" that there is probable cause to believe that evidence consisting of fingerprints and microscopic particles of human blood, flesh, hair and clothing is being concealed on the automobile of Joseph Giacalone should properly be treated as a "mere conclusion," *Aguilar v. Texas*, 378 U.S. 108, 113, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), or as a "mere affirmation of suspicion and belief." *Nathanson v. United States*, 290 U.S. 41, 46, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933).

I would affirm the judgment of the district court.

McCREE, Circuit Judge, with whom Judge PECK and Judge LIVELY join, (dissenting).

I concur in Judge Lively's dissenting opinion, and I write separately only because I was a member of the panel which decided one of the cases relied upon in the majority opinion for the proposition that "once a Magistrate has found probable cause and has issued a warrant, his judgment is conclusive unless arbitrarily exercised, since the purpose of the Fourth Amendment has

been served by his review of the affidavit." The cited cases use the terms "abuse of discretion" and "arbitrariness" as a shorthand way of describing the courts' obligation to determine whether the facts in the affidavit and all the permissible inferences therefrom could afford the magistrate probable cause to believe that evidence of a crime would be found in the place to be searched. They do not hold that the magistrate's determination is "conclusive" and therefore immune from judicial review as suggested in the majority opinion.

Our precedents do not support the statement in the majority opinion that "the purpose of the Fourth Amendment has been served by [the magistrate's] review of the affidavit" and that "the purpose of the probable cause requirement is not so much to establish a burden of proof as to require that searches be authorized by an impartial judicial officer." The language of the Fourth Amendment explicitly rejects this analysis. It does not simply require that a warrant be judicially authorized. It also provides "no Warrants shall issue, but upon probable cause . . . ." This is an express requirement that the person seeking the issuance of a warrant must sustain the burden of affording the magistrate probable cause to believe that the place to be searched will produce the things to be seized. And probable cause means something more than reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).