## STATE OF HAWAII, Plaintiff-Appellant, *v*. BLAISDELL KAUKANI, Defendant-Appellee

### NO. 6215

APRIL 13, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

Defendant-appellee Blaisdell Kaukani (hereinafter referred to as appellee) was charged with Promoting a Detrimental Drug in the Second Degree.[1] Subsequent to arraignment, he moved to suppress all evidence relating to the charged offense. The evidence had been seized during a search of his dwelling conducted pursuant to a search warrant. The circuit court found a lack of probable cause to support the issuance of the search warrant, and it ordered the suppression of all evidence seized during the course of the search. The State appeals from the order of the circuit court.

The primary question presented is whether there was sufficient probable cause, based upon the information contained in a police officer's affidavit, to support the district court's issuance of the search warrant. We find that the affidavit supports the district court's finding of probable cause, and we consequently reverse the circuit court's order granting appellee's motion to suppress.

The search warrant was based upon the affidavit of Detective Frank Silva, who was assigned to the Vice Section of the Kauai Police Department. Detective Silva's affidavit was in turn based upon information received by him from an unidentified informant. The search warrant was issued on December 5, 1975, and on the same day appellee's dwelling was thoroughly searched pursuant to the warrant. As a result of the search, some 27 items of evidence were seized by the police.

A hearing on appellee's motion to suppress was held on May 13, 1976. During the course of that hearing, the State orally stipulated to a suppression of five items of evidence

---

[1] See HRS § 712-1248 (1976 Repl.).

which had been uncovered in the living room of appellee's house. The house was occupied by three other persons besides appellee, and the State agreed that the evidence found in the living room could not be conclusively connected to appellee and would not be used against him at trial.[2]

The circuit court ordered the suppression of the remainder of the evidence based upon two findings: (1) the affidavit of Detective Silva referred to the informant's observation of "what appeared to be" marijuana on appellee's premises, but did not definitely state that what was seen by the informant was in fact marijuana, and (2) the affidavit failed to contain any reference with respect to the ability of the informant to recognize marijuana nor whether the information given by the informant on prior occasions was related to drug cases or not. On the basis of these two grounds, the circuit court found that there was no probable cause and that the search warrant should not have been issued.

## I.

At the outset, we note that the purpose of a reviewing court's inquiry is merely to determine from the facts set forth in the affidavit, along with permissible inferences to be drawn therefrom, whether the district judge's decision to issue the search warrant was arbitrary because the affidavit contains no information which, if credited, is sufficient to establish probable cause.[3] *United States v. Giacalone,* 541 F.2d 508, 514 (6th Cir. 1976); *see State v. Kalai,* 56 Haw. 366, 367-68, 537 P.2d 8, 10 (1975). After reviewing Detective Silva's affidavit and taking account of all inferences which can justi-

---

[2] The State has assured this Court that it will fully comply with this stipulation in all future proceedings in this case.

[3] Under Rule 41(c), Hawaii Rules of Criminal Procedure (1960), which was in effect at the time of the district court probable cause hearing in the instant case, a search warrant could be issued only upon a sworn affidavit establishing the grounds for the issuance of the warrant. Current Rule 41(c), Hawaii Rules of Penal Procedure (1977), contains a nearly identical provision.

fiably be drawn from it, we conclude that the affidavit contains information sufficient to at least minimally support a finding of probable cause. Hence we find that the district judge's decision was not arbitrary.

Beginning with *State v. Davenport,* 55 Haw. 90, 516 P.2d 65 (1973), this Court has echoed the standards set out by the Supreme Court of the United States in *Aguilar v. Texas,* 378 U.S. 108 (1964), with regard to testing the sufficiency of an affidavit based upon an informer's tip. In order for a finding of probable cause to be sustained, therefore, the affidavit must set out some of the underlying circumstances from which the informant concluded that the illegal activity was taking place, as well as some of the underlying circumstances from which the police officer concluded that the informant was credible.

The affidavit in the instant case states that the informant, while on certain described premises, "observed what appeared to be a marijuana (Cannabis) plant hanging in said premises."[4] Although this quoted passage can by no means be regarded as a prime example of the kind of underlying circumstances demonstrating that an informant "could rightfully conclude that illegal activity was taking place", we are on the whole persuaded that the statement is minimally suffi-

---

[4] After preliminarily describing in detail the premises sought to be searched, as well as providing certain background information as to Detective Silva's police experience, the affidavit recites the following information:

That on December 4, 1975, at approximately 6:10 P.M., an informant who has proved to be reliable in the past informed affiant [Detective Silva] that on December 3, 1975 while on the premises by invitation, he had observed what appeared to be a marijuana (Cannabis) plant hanging in said premises.

That the affiant considers informant to be reliable; that this belief is founded upon affiant's past experience with the informant during the past two (2) years; that this belief is also founded upon the information previously received from this informant when considered and evaluated in the context and of all facts and circumstances set forth in this affidavit; that affiant has received information on seven (7) occasions in connection with separate criminal offenses from this informant, which information has on three (3) instances been verified by affiant as accurate, leading to three (3) separate arrests.

\* \* \* \* \*

cient to satisfy the first prong of the *"Aguilar* two-prong test"*.

First, the affidavit makes clear that the informant personally *observed* what appeared to be marijuana. Such personal observation, as opposed to mere supposition, forms a valid basis for the conclusion that the information itself is accurate and reliable. *See State v. Delaney,* 58 Haw. 19, 22, 563 P.2d 990, 992 (1977); *State v. Austria,* 55 Haw. 565, 569, 524 P.2d 290, 294 (1974); *State v. Davenport, supra,* 55 Haw. at 95, 516 P.2d at 69.

Second, although the reference in the affidavit to "what *appeared* to be" marijuana is somewhat bothersome, we conclude that that language was permissible insofar as the question of whether the affidavit establishes probable cause is concerned. In *State v. Diaz,* 3 Or.App. 498, 473 P.2d 675 (1970), an informant told a police officer that he saw "what appeared to be heroin" in the defendant's hands. That information led to the stopping of the defendant's car by the police officer, who conducted a search of the vehicle. The search revealed a plastic bag containing white powder, which a field test showed to be heroin. On appeal, this warrantless search was upheld. Although it is true that other corroborative facts were present in that case to support a finding of probable cause, the court nevertheless explicitly rejected the defendant's objection to the informant's statement that the defendant had "what appeared" to be heroin in his hands. The court termed the defendant's objection to the informant's phraseology as merely "a play on words", and it summarily stated that "[o]nly a laboratory technician can positively affirm that a substance that appears to be heroin is in fact heroin." *Id.* at 502, 473 P.2d at 677.

We agree with the result reached in *Diaz,* and we find that it is not always necessary that an informant be certain that that which he has seen is in fact contraband material in order to sustain a finding of probable cause. This seems to be particularly true where drugs and other controlled substances are concerned, for instantaneous verification of the composition of such substances may not always be available to an informant.

In *United States v. Cutts*, 535 F.2d 1083 (8th Cir. 1976), a police officer stated in his affidavit that he had observed "powder represented to be heroin". The defendant challenged the sufficiency of the affidavit on the grounds that the affidavit did not further elaborate on who was present when the powder was observed, who had possession of the powder, and who represented it to be heroin. The Court of Appeals nevertheless upheld the issuance of the warrant on the basis of the affidavit. The court was persuaded by the following statement from *United States v. Ventresca*, 380 U.S. 102, 109 (1965):

> Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

535 F.2d at 1084. Thus, adhering to a "commonsense reading of the affidavit", the court found that a magistrate could properly conclude that a controlled substance could be found on the premises involved. *Id.*

This Court has similarly advocated a "commonsense and realistic", and not "hypertechnical", reading of affidavits in connection with the determination of probable cause. *State v. Kalai, supra,* 56 Haw. at 371, 537 P.2d at 12. Moreover, we are particularly mindful of the rule that great deference should be accorded to a magistrate's finding of probable cause. *United States v. Brinklow,* 560 F.2d 1003, 1006 (10th Cir. 1977); *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir. 1977); *United States v. Fluker,* 543 F.2d 709, 713 (9th Cir. 1976); *United States v. Giacalone, supra,* 541 F.2d at 514; *see United States v. Ramirez,* 279 F.2d 712, 716 (2d Cir), *cert. denied,* 364 U.S. 850 (1960). In addition, although no elements of a crime are conclusively established by the affidavit in this case, such conclusive proof is not required, for this Court need only look for facts supporting *probabilities. Giacalone, supra,* 541 F.2d at 515. Therefore, interpreting the affidavit now before us in a commonsense and realistic fashion, and not in a hypertechnical manner, we find that the

issuing magistrate or judge could reasonably infer from the affidavit as a whole that marijuana could be found on appellee's premises. While this issue may admittedly be regarded as a close one, we are persuaded that its result should be guided by the preference to be accorded to search warrants. *See United States v. Ventresca, supra,* 380 U.S. at 109; *Jones v. United States,* 362 U.S. 257, 270-71 (1960).

Having found that the first prong of the *Aguilar* test has been at least minimally satisfied, we turn to appellee's contention that the affidavit was insufficient because it fails to satisfy the second *Aguilar* prong. Appellee devotes considerable attention to the fact that although the affidavit states that the informant provided Detective Silva with information on seven previous occasions in connection with separate criminal offenses, on only three of those instances had that information been verified by Silva as being accurate. By then reducing this data into pure percentage figures, appellee argues that the affidavit demonstrates that the informant was proven reliable less than 50% of the time. This analysis, appellee argues, bolsters the ruling of the circuit court.

We reject any attempt to determine the credibility of an informant by means of statistical "batting-averages". The testing of an informant's credibility "is not subject to rigid standards and given numbers, and the determination ought to be left to the magistrate's sound discretion, provided the affidavit contains some substantial actual basis giving rise to the inference actually drawn." *People v. Gray,* 63 Cal.App.3d 282, 288, 133 Cal.Rptr. 698, 701 (1976).

This issue was previously disposed of in *State v. Davenport, supra,* in which the police officer's affidavit revealed that only eleven of approximately twenty-one leads given by the informant were verified by the police officer. This Court stated in *Davenport:*

> While this record arguably shows that the informer was somewhat more than half right in the past, (and hence somewhat less than half wrong), it also may be read to indicate only that officer Hayakawa *personally* verified

the informer's tips eleven times, without necessarily implying that the remaining ten tips proved fruitless.

55 Haw. at 96-97, 516 P.2d at 70. A footnote to the above-quoted passage indicates that another perfectly plausible reading of the affidavit would be that the remaining tips were merely not pursued by the police officer and *not* that they proved unreliable.

In the instant case, the verification by Detective Silva of three of the seven items of information provided by the informant likewise does not indicate that the remaining four items of information proved to be unreliable. Therefore, the informant's provision of information on seven previous occasions, with verification leading to arrests on three of those occasions, was sufficient to justify a finding that the informant was credible.

The failure of the affidavit to mention whether the informant's prior information was drug-related or not carries little significance insofar as the second *Aguilar* prong is concerned. The primary concern under the second prong is the basic credibility of the informant. However, there is no requirement that the informant must be shown to be credible with specific respect to the type of criminal activity for which the search warrant is being sought. "[T]he crucial consideration is whether the affidavit sets forth facts to show that the affiant is justified in believing the informer's allegations of criminal activity." *State v. Austria, supra,* 55 Haw. at 569, 524 P.2d at 293. In *State v. Austria,* the police officer's affidavit recited only that the informant "had on at least four occasions given the police correct information concerning law violations which have been proven correct and accurate upon independent verification." This information had, according to the affidavit, "led to the arrest of over 20 persons for crime violations." No specification of the nature of the crimes involved was mentioned in the affidavit. This Court perceived no difficulty in finding that the informant's credibility had been established by the affidavit.

The affidavit here sets forth sufficient facts to show that Detective Silva was justified in regarding the informant to be

believable. Hence, the district court was justified in finding that the affidavit satisfied the second prong of *Aguilar*.

Therefore, reviewing the affidavit in its entirety, we conclude that it was sufficient to satisfy both prongs of the *Aguilar* test. The district judge properly concluded that probable cause existed, and the search warrant was properly issued.[5]

II.

Finally, appellee raises the argument that the ruling of the circuit court should be upheld because there is some indication that certain evidence involved in this case was obtained during the course of a subsequent warrantless search of appellee's premises.

The testimony adduced in the circuit court indicates that after the search of appellee's dwelling pursuant to the warrant had been completed, the police officers proceeded to transport appellee and two other arrestees to the main police station in Lihue. On the way to Lihue, the officers discovered that some of the evidence which had earlier been seized pursuant to the warrant had inadvertently been left behind at the scene of the search. The officers thus returned to appellee's house to retrieve the forgotten evidence. Detective

---

[5] It must be emphasized, however, that in spite of our holding that the affidavit was at least minimally sufficient to support the finding of probable cause in this case, this should not be regarded as approval by this Court of widespread use of the type of information contained in the affidavit now before us. Our holding rests heavily upon the view that considerable weight should be accorded to the judgment of the district judge who issued the warrant in order to encourage police officers, whenever possible, to present their cases for searches to impartial judicial officers before taking action. *Davenport*, 55 Haw. at 98, 516 P.2d at 71; *accord, Austria*, 55 Haw. at 567, 524 P.2d at 293-94. Nevertheless, law enforcement personnel throughout the State are admonished to exercise greater caution in the future in formulating affidavits for purposes of obtaining search warrants. Avoidance of the use of information relating to mere "appearances" of contraband or other illegal substances, as well as avoidance of the omission of reference to the general nature of the information which the informant has previously supplied, would most certainly work to enhance the ability of any court to discern whether the requisite probable cause exists for the issuance of a search warrant.

Silva testified that upon arriving at the house, the officers noticed a strong smell of marijuana smoke coming from the dwelling. They also saw someone looking out of the house and heard the sound of persons running. Therefore, in order to check on what they believed to be suspicious behavior, the officers reentered the house without first obtaining permission from the occupants.

Appellee argues that it is impossible to distinguish between evidence which was seized during the initial search, which was conducted pursuant to the warrant, and evidence which may have been seized during the later assertedly illegal warrantless search. Therefore, appellee maintains that all of the evidence should be suppressed.

We note that the State stipulated in circuit court to a suppression of any evidence seized during the officers' second search of the house. It is apparent, however, that in ordering the suppression of all of the evidence in this case, the circuit court did not find it necessary to determine which items of evidence were seized during the initial search and which items of evidence, if any, were seized during the officers' second visit to the house.

We cannot conclude from the record before us that the circuit court will be unable, upon remand, to determine which items of evidence — if any — were in fact seized during the course of the second search. Hence, it would be premature for us to consider appellee's argument that *all* of the evidence should be suppressed as a consequence of the second, assertedly illegal search. It would be more appropriate to allow the circuit court to determine whether any evidence was in fact seized during the second search. If the circuit court finds that certain evidence was seized during the second search, that evidence must be suppressed pursuant to the State's stipulation. Of course, evidence seized during the course of the initial search, conducted pursuant to the warrant, should not, with the exception of the five items taken from the living room of the house,[6] be suppressed.

---

[6] See n. 2 and text relating thereto, *supra*.

130　

The order suppressing evidence is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.

*Calvin K. Murashige,* Deputy Prosecuting Attorney, for Plaintiff-Appellant.

*Donald S. Kagawa* for Defendant-Appellee.