**UNITED STATES of America, Plaintiff,**

v.

**Charles LEWIS and Delmar Nelson, Defendants.**

**Civ. No. 82–80611.**

United States District Court, E.D. Michigan, S.D.

Dec. 1, 1983.

Robert Donaldson, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Milton Henry, Detroit, Mich., for Charles Lewis.

Gershwin Drain, Detroit, Mich., for Delmar Nelson.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

Before me are the defendants' objections to the recommendations contained in the Magistrate's Report and Recommendation of October 3, 1983 that their motions to suppress the fruits of a search of their person following their arrest and to suppress the fruits of a search warrant issued and executed shortly after their arrest be denied.

Defendants were arrested on December 13, 1982. The next day a Drug Enforcement Administration agent obtained a search warrant from a state court judge for defendant Charles Lewis' (Lewis) residence at 79 Monterey, Highland Park, Michigan. The magistrate's report fully describes the circumstances of the arrest and the issuance and execution of the search warrant. The magistrate found that the arrest of Lewis was legal but that the arrest of Nelson was illegal and that the search was legal.

Defendants contend that the affidavit in support of the search warrant was legally insufficient. The government contends otherwise.

The government does not object to the magistrate's determination that defendant Delmar Nelson's (Nelson) arrest was illegal. Nelson claims that as a consequence of his illegal arrest his fingerprints and the fruits of the use of his fingerprints should be suppressed. Nelson also argues that inaccurate statements in the warrant vitiate it. The government contends otherwise.

### II.

As to Nelson's fingerprints, they should be suppressed. *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). However, in view of the government's assertion that its fingerprint expert utilized a lawfully obtained set of Nelson's fingerprints the admissibility of the fingerprint identification on coin envelopes seized during the course of the search at 79 Monterey must abide the proofs at trial.

As to the alleged inaccuracies in the affidavit, the magistrate's report fully discusses this claim and comes to the correct conclusion. There is no evidence that the agent signing the affidavit lied or acted with a reckless disregard for the truth or entertained serious doubts about the information stated in his affidavit. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

### III.

As to the affidavit for the search warrant, the issue is whether it indicates reasonable grounds to believe that the Monterey residence contained narcotics. *United States v. Eisner,* 297 F.2d 595, 597 (6th Cir.1962). The affidavit "must be tested and interpreted by magistrates and courts in a common sense and realistic fashion." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). There is a presumption that a

magistrate has properly performed his duty with regard to whether an affidavit for a search warrant shows probable cause. *See United States v. Giacalone,* 541 F.2d 508, 513–514 (6th Cir.1976). As explained in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place." * In doubtful cases or where alternative readings of the affidavit are equally reasonable the magistrate's judgment is to be respected in light of the preference given to search warrants. *United States v. Jenkins,* 525 F.2d 819, 824 (6th Cir.1975). Lastly, some courts have drawn the inference that known drug dealers are likely to keep drugs in their homes; even where there is no evidence directly leading to that inference. *United States v. Dubrofsky,* 581 F.2d 208, 213 (9th Cir.1978); *United States v. Johnson,* 660 F.2d 749, 753 (9th Cir.1981). But see: *United States v. Bailey,* 458 F.2d 408, 411 (9th Cir.1972).

## IV.

### A.

The affidavit in question reads as follows:

1. That he [the affiant] is an Agent of the Drug Enforcement Administration and has been so employed by the Drug Enforcement Administration for approximately two years.

2. That on 12/13/82 affiant was contacted by Police Officer Mamgum of the Detroit Police Department.

3. That Officer Mamgum relayed to S/A Garza that he had received information from a confidential informant indicating that said house on 79 Monterey, Highland Park, Michigan contains heroin and cocaine.

4. That Charles R. Lewis told confidential informant that he had received within the last 24 hours in excess of eight ounces of heroin and an undetermined quantity of cocaine which relayed to Officer Mamgum who then relayed it to S/A Garza.

5. That Charles R. Lewis would be driving a white 1982 Cadillac bearing Michigan license plate TCV 349 and that he would be accompanied by at least three black males.

6. That said 1982 Cadillac would be stolen.

7. That Charles R. Lewis would utilize said vehicle to drop-off the next day's load of heroin and cocaine.

8. That Charles R. Lewis accompanied by at least 3 black males would receive money for the heroin and cocaine.

9. That they would have in their possession large amounts of money and small amounts of heroin and cocaine after the drop-off was completed.

10. That they would return in the 1982 Cadillac to 79 Monterey, Highland Park, Michigan that evening.

11. That Officer Mamgum stopped said vehicle as it approached 79 Monterey, Highland Park, Michigan and determined by personal observation that it was driven by Charles R. Lewis.

12. That Charles R. Lewis was accompanied by three black males.

13. That Charles Lewis did have in his possession approximately $2,500.00 in U.S. Currency and a small amount of cocaine.

14. That one of Lewis' companions did have in his possession approximately ¼ ounce of heroin.

15. That said residence of 79 Monterey, Highland Park, Michigan is verified by Officer Mamgum as being the residence of Charles R. Lewis.

16. That affiant knows from his personal experience as a Special Agent with the Drug Enforcement Administration that those who traffic in narcotics generally keep firearms on the premises to protect

---

* I conclude from these cases that reading an affidavit for a search warrant is not an exercise in exegetics.

the drugs they distribute and the proceeds of said narcotic distribution.

### B.

■ Reading the affidavit in light of the legal principles recited in Part II, I am satisfied that the magistrate could logically conclude that the residence at 79 Monterey contained narcotics even though the affidavit does not say so expressly. In arriving at this determination I have ignored paragraph 3 of the affidavit because of its conclusional nature.

The affidavit says that Lewis had recently received a shipment of heroin and cocaine which he would be distributing and that he would be receiving money for them. The affidavit goes on to say that after distributing the heroin and cocaine Lewis would be returning to his residence with a large amount of money and a small amount of the cocaine and heroin. Lastly, the affidavit says there would be firearms in the residence because persons who traffic in narcotics keep firearms. Looking at the totality of the circumstances described in the affidavit there was a fair probability that Lewis had additional heroin and cocaine since there is nothing in the affidavit to suggest that all of the heroin and cocaine which Lewis received would be distributed that night. The affirmative statement that people like Lewis keep firearms in their residence to guard their narcotics inferentially suggests that additional narcotics would be in Lewis' residence.

At oral argument earlier this month I suggested that the recent Sixth Circuit decision in *United States v. Algie*, 721 F.2d 1039 (1983) caused me some concern. In *Algie*, over a vigorous dissent, two judges of the court of appeals found that a search warrant for an office should be quashed because the supporting affidavit stated that a pen-register record that the office had been dialed approximately fifteen times over eleven days from an apartment where gambling activity was going on was simply an insufficient predicate for the warrant. There was nothing in the affidavit to allow the conclusion that the calls had been answered or describing the intervals between the calls. The court of appeals said that this evidence raised only a mere suspicion that the office was involved in illegal activities and that "mere suspicion ... is insufficient to establish any fair probability that contraband or other instrumentalities of crime would be found on the property ... The inference that contraband or evidence of illegal operations can be found on every premises called by a known bookmaker is not the sort of reasonable inference required to support an intrusion." *Algie*, at 1043.

Here, as described above, the inference to support the intrusion is substantially stronger. The principal inference drawn is that a narcotics dealer would likely have narcotics in his residence shortly after receiving a shipment of narcotics, distributing a quantity and returning to his residence. While I may have asked for more in the affidavit had I been presented with the request, I cannot say the decision to issue the warrant was "arbitrarily exercised". *Id.*

### V.

For the reasons stated in the Magistrate's Report and Recommendation as supplemented in this memorandum Lewis' motion to suppress is denied in all respects and Nelson's motion to suppress is granted in part and denied in part. The government shall present an appropriate order.

SO ORDERED.